Stephen SHORT, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent

and

Washington Metropolitan Area Transit Authority, Intervenor.

No. 97–AA–1504.

District of Columbia Court of Appeals.

Submitted Oct. 22, 1998.

Decided Nov. 30, 1998.

Carolyn McKenney, Washington, DC, was on the brief, for petitioner.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Michael D. Dobbs, with whom Ann Wittik-Bravmann, Bowie, MD, was on the brief, for intervenor.

Before TERRY and REID, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

In an *August 15, 1997 decision*, the Director of the Department of Employment Services ("Director") affirmed a Hearing Examiner's compensation order denying Stephen Short a modification of benefits. Mr. Short appealed, contending: (1) that the Hearing Examiner did not accord the proper weight to the treating physicians' testimony; and (2) that the Hearing Examiner failed to apply the statutory presumption that the injury comes under the District of Columbia Workers' Compensation Act, D.C.Code § 36–301, *et seq.* (1997) ("the Act"). Washington Metropolitan Area Transit Authority ("WMATA") filed as an intervenor, contending: (1) that the Director erred by denying a motion to dismiss based on Mr. Short's failure to file a memorandum of points and authorities; and (2) that the doctrine of *res judicata* precludes Mr. Short from receiving compensation. We reverse and remand for further consideration.

## I.

Mr. Short worked as a metrobus operator for WMATA. On November 2, 1985, the seat of Mr. Short's bus snapped back, and Mr. Short sustained injuries. Mr. Short began to see an orthopedist, Dr. Rida Azer, complaining of low back pain, with pain radiating into his legs and feet. Dr. Azer diag-

nosed Mr. Short with a herniated disc at L5–S1, and documented a possible radiculopathy [1] through an electromyogram.[2] Dr. Azer referred Mr. Short to Dr. Juan Jammes, a neurologist. Dr. Jammes diagnosed Mr. Short with diabetes mellitus after performing a glucose tolerance test. Dr. Jammes concluded that Mr. Short was suffering from a diabetic neuropathy,[3] and not a radiculopathy. The neuropathy was determined to be the cause of the pain and numbness in Mr. Short's legs and feet.

Mr. Short filed a claim for workers' compensation benefits for his back injury and asserted that his diabetes and diabetic neuropathy were work-related. A claim examiner from the Office of Workers' Compensation referred Mr. Short to Dr. Harvey Rubenstein for an evaluation in 1986. Dr. Rubenstein diagnosed Mr. Short with diabetes mellitus, and concluded that the work-related injury did not cause the diabetes. In an order dated May 29, 1987, a Hearing Examiner awarded benefits for a closed period from August 17, 1986 to October 19, 1986 for the back injury, but concluded that Mr. Short's diabetes and diabetic neuropathy were not caused by the work-related accident.

Mr. Short returned to work in 1987. Mr. Short continued to be treated by Dr. Azer, and began treatments with Dr. Rubenstein. Between 1987 and 1995, Mr. Short missed work for two brief periods due to muscle spasms in his lower back and pain in his lower back, legs and feet. During those periods, Mr. Short received disability benefits. Due to increased pain and numbness in his feet, however, Mr. Short stopped working in December 1995. Mr. Short is currently unable to work as he no longer has full use of his feet.

Mr. Short filed for a review of benefits, seeking a modification of the May 29, 1987

compensation order, to award him benefits beginning December 11, 1995. Mr. Short presented evidence from Dr. Azer and Dr. Rubenstein that his symptoms involving the lower extremities and feet were not related to his diabetes, but to his November 2, 1985 work-related injury. Dr. Azer diagnosed Mr. Short with bilateral tarsal tunnel syndrome.

In an order dated January 27, 1997, a Hearing Examiner denied Mr. Short's request for a modification of the May 29, 1987 compensation order. The Hearing Examiner concluded that "the complaints which claimant admits to disabling him from his employment are similar in kind, if not degree, to those complaints made at the time of the original hearing...." *Short v. Washington Metro. Area Transit Auth.*, H & AS No. 87–44A, OWC No. 083016, at 6 (Compensation Order, January 27, 1997). The Hearing Examiner stated that the doctrine of *res judicata* barred Mr. Short's request for modification. *Id.*

Mr. Short filed an application for review with the Director, but did not file a memorandum of points and authorities. WMATA filed a motion to dismiss for failure to file a memorandum of points and authorities. In an August 15, 1997 order, the Director denied the motion to dismiss. *Short v. Washington Metro. Area Transit Auth.*, Dir. Dkt. 97–20, H & AS No. 87–44A, OWC No. 083016, at 3 (Director's Decision, August 15, 1997). The Director then affirmed the January 27, 1997 compensation order. *Id.*

## II.

▆ As an initial matter, WMATA claims that the Director should have granted its motion to dismiss because Mr. Short failed to file a memorandum of points and authorities. We disagree.

---

1. A radiculopathy is a disease of the spinal nerves, usually caused by trauma. 3 J.E. SCHMIDT, M.D., ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER R–8 (1991).

2. This is a test that records "the intrinsic electrical properties of skeletal muscle ...." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 427 (26th ed.1981).

3. A neuropathy is a degenerative condition of the spinal nerve caused by a lack of blood supply. 3 SCHMIDT, *supra* note 1, at N–54. A neuropathy can be caused by diabetes. *See* 10 ROSCOE N. GRAY, M.D., ATTORNEY'S TEXTBOOK OF MEDICINE § 74.94(1) (3d ed.1998).

■ As an appellate court, we give deference to an agency's interpretation of the regulations which govern it, so long as that interpretation is not unreasonable or inconsistent with the language of the statute or its legislative history. *Robinson v. Smith*, 683 A.2d 481, 488 (D.C.1996); *Kalorama Heights Ltd. Partnership v. District of Columbia Dep't of Consumer and Regulatory Affairs*, 655 A.2d 865, 868 (D.C.1995). The regulation in question requires a party to file a memorandum of points and authorities in addition to an application for review. 7 DCMR § 230.2 (1986).[4] The requirement of a memorandum of points and authorities, however, is not found in the language of the statute. The statute states in part, "The Mayor is authorized to establish an administrative procedure for review of compensation orders raising a substantial question of law or fact. Application for such review shall be made by any party within 30 days from the date a compensation order is filed as provided in § 36–320." D.C.Code § 36–322(b)(2) (1997).

A memorandum of points and authorities is analogous to a brief filed with this court. We note that while the rules of this court require briefs to be filed by the parties, if a party fails to file a brief, the court may nonetheless choose to move ahead with the case. D.C.App. R. 31(c).

■ The failure to file a memorandum of points and authorities does not automatically require a dismissal of the case by the Director. *See, e.g., Armstrong v. Howard Univ.*, Dir. Dkt. No. 91–110, H & AS No. 91–272 (Director's Decision, April 16, 1992) (granting leave to file memorandum when a party has failed to do so); *Lopez v. Allied Maintenance Corp.*, H & AS No. 86–254 (Director's Decision, July 7, 1987) (extending time to file memorandum). Like a brief, the memorandum is a useful tool for the Director, as it focuses the Director's attention to the legal and factual issues the parties desire to argue. Because the memorandum benefits the Director, if the Director chooses to waive the requirement and review the case without the memorandum, this court will not reverse on that basis.

## III.

WMATA contends that *res judicata* precludes Mr. Short's request for a modification of the May 29, 1987 compensation order. We disagree.

■ *Res judicata* ("claim preclusion") precludes a party from relitigating an entire claim that has already reached a final judgment on the merits. *See Oubre v. District of Columbia Dep't of Employment Servs.*, 630 A.2d 699, 703 (D.C.1993) (citing *Gilles v. Ware*, 615 A.2d 533, 538 (D.C.1992); *Henderson v. Snider Bros.*, 439 A.2d 481, 485 (D.C.1981)). "[O]nce a claim is finally adjudicated, the doctrine of claim preclusion will operate to prevent the same parties from relitigation of not only those matters actually litigated but also those which might have been litigated in the first proceeding." *Stutsman v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.*, 546 A.2d 367, 369–70 (D.C.1988) (citations omitted). In order for claim preclusion to apply, the current case and the original case must arise from "a common nucleus of facts." *Faulkner v. Government Employees Ins. Co.*, 618 A.2d 181, 183 (D.C.1992). Further, *res judicata* does not apply to a situation where the basis for a second claim could not have been discovered with due diligence. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 887 (D.C.1998).

■ Collateral estoppel ("issue preclusion") precludes the relitigation of specific facts or issues that have actually been decided in a previous case when those issues are essential to the case. *Oubre, supra*, 630 A.2d at 703. Collateral estoppel does not apply if

---

4. The regulation states:

Within thirty (30) days from the date that a compensation order is filed as provided in § 21(e) of the Act (D.C.Code § 36–320(e) (1981)), any party may seek the Director's review by filing with the Director two (2) copies of an application for review, a memorandum of points and authorities in support of the application and a certification that copies of the application and memorandum have been served by mail or delivery, upon the opposing party. The party shall also file a copy of the application for review with the Hearings and Adjudication Section.

7 DCMR § 230.2 (1986).

the issues are not identical, even if the issues are similar. *Hutchinson v. District of Columbia Office of Employee Appeals,* 710 A.2d 227, 236 (D.C.1998) (citing 18 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 132.02[2][a] (3d ed.1997)).

■■■ While both *res judicata* and collateral estoppel apply in administrative agency procedures, *see Oubre, supra,* 630 A.2d at 703, the Act creates a specific procedure to revisit issues previously decided by a compensation order. Up to one year after the last disability payment, the compensation order may be reviewed and modified "where there is reason to believe that a change of conditions has occurred." D.C.Code § 36–324(a) (1997). This includes a change as to "fact or the degree of disability." *Id.* § 36–324(a)(1). Thus, when a claimant injures himself, returns to work, but the original injury worsens (*e.g.,* new symptoms manifest themselves), causing him to be unable to work again, the claimant may avail himself of a review procedure to modify the compensation order and seek additional benefits. *See id.*

■■■ In this instance, *res judicata* does not apply. Specifically, Mr. Short argues that his condition changed from the last payment of compensation, meriting a modification of benefits. The Act provides a procedure through which the claimant can make this argument. *See* D.C.Code § 36–324. Thus, Mr. Short's entire claim is not precluded by the prior procedure. Claim preclusion would apply only if Mr. Short were trying to file a new workers' compensation claim for the same injury, based on the same accident, using evidence that should have been discovered with due diligence. *See Wallace, supra,* 715 A.2d at 887.

■■■ Nor does collateral estoppel apply. The factual issues in this litigation are indeed similar to those litigated in the 1987 proceeding. Both proceedings involved symptoms to the foot and lower extremities. A review of WMATA's brief, however, shows that while the symptoms are similar, they are not the same. While the symptoms present in the 1987 proceedings stemmed from a diabetic neuropathy, Mr. Short has alleged

that new symptoms arose that are inconsistent with a neuropathy. Specifically, Mr. Short has been diagnosed with tarsal tunnel syndrome, a diagnosis absent during the 1987 proceeding. Mr. Short contends that these new symptoms provide evidence of a worsening of the work-related injury that he suffered in 1985. Thus, Mr. Short alleges a changed condition, and should not be precluded from litigating this issue under the doctrine of collateral estoppel. *See* D.C.Code § 36–324. That the symptoms may be similar does not invoke the doctrine collateral estoppel where they are not identical. *See Hutchinson, supra,* 710 at 236. Thus, as the Director's decision rests on the basis of *res judicata,* the decision must be reversed.

### IV.

■■■ Mr. Short argues that the Hearing Examiner did not accord him the presumption of compensability under the Act. WMATA counters that the presumption is not applicable in this proceeding.

The statutory language sets forth a presumption that injuries are compensable under the Act, stating, "In *any proceeding* for the enforcement of a claim for compensation under this chapter it shall be presumed, in absence of evidence to the contrary ... [t]hat the claim comes within the provisions of this chapter...." D.C.Code § 36–321 (1997) (emphasis added). The language of the Act makes no distinction between an initial claim and a review proceeding. Indeed, the words "any proceeding" are broad enough to cover a review proceeding under D.C.Code § 36–324.

Moreover, this court has previously held that the presumption applies when the claimant files for additional benefits due to new symptoms allegedly stemming from the work-related injury, even after the payment of initial benefits had been terminated. *Whittaker v. District of Columbia Dep't of Employment Servs.,* 668 A.2d 844, 846–47 (D.C.1995). In *Whittaker,* a claimant tore the meniscus cartilage in his knee as a result of a work-related injury. The cartilage tears were corrected through surgery. The tear was superimposed upon a pre-existing arthritic condition that was initially asymptom-

atic. Eventually, new symptoms arose stemming from the arthritic condition. This court held that even those symptoms that later manifested themselves, and were allegedly caused by the exacerbation of the pre-existing injury, were to be given the presumption of compensability.

■■■■■ An interpretation that the presumption applies in a review proceeding under D.C.Code § 36–324 is consistent with the humanitarian purposes of the Act. "The presumption is 'designed to effectuate the humanitarian purposes of the statute' and 'reflects a strong legislative policy favoring awards in arguable cases.'" *Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564, 572 (D.C.1990) (quoting *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C. 1987) (internal citations omitted)). To benefit from this presumption, the claimant need only show some evidence of (1) a disability, and (2) a work-related incident having the potential of causing or contributing to the injury. *Spartin, supra,* 584 A.2d at 572. In accordance with this presumption, doubts are to be resolved in favor of the claimant. *Baker v. District of Columbia Dep't of Employment Servs.*, 611 A.2d 548, 550 (D.C.1992).

To support its contention that the presumption does not apply, WMATA points to *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 703 A.2d 1225 (D.C.1997) ("*WMATA*"). In that case, a claimant sought a modification of a compensation order. *Id.* at 1227. The claimant had been receiving permanent partial disability, but sought permanent total disability. The claimant presented no evidence of a change in medical condition. The Hearing Examiner granted the modification, ruling that the employer failed to show job availability. This court held that this was an impermissible shifting of the burden of proof, as it was the claimant who sought the modification. Therefore, it was the claimant's burden to show a change in medical condition to justify the change in disability rate. *Id.* at 1231.

In *WMATA,* the issue was not whether the injury was compensable under the Act; it was already deemed compensable. Instead, the case revolved around whether the benefits should be changed. Thus, as compensability was not at issue, the presumption was not a factor in the decision.

■■■■■ Therefore, where a claimant files for a review of benefits due to an alleged changed degree of disability, it is presumed under the Act that the changes stem from the initial work-related injury and are covered by the Act. *See* D.C.Code § 36–321. In sum, in accordance with our case law, under a review proceeding, to benefit from this presumption a claimant need only present some evidence of (1) a change in the degree of disability, and (2) some initial work-related injury that caused the previous disability. *See Spartin, supra,* 584 A.2d at 572.

## V.

■■■■■ Finally, Mr. Short contends that the Hearing Examiner did not accord his treating physicians the required deference. Under the law of the District of Columbia, there is a preference for the testimony of treating physicians over doctors retained for litigation purposes. *See Stewart v. District of Columbia Dep't of Employment* Servs., 606 A.2d 1350, 1353 (D.C.1992). Even with this preference, however, the Hearing Examiner may choose to credit the testimony of a non-treating physician over a treating physician. *See id.* This court cannot substitute its judgment as to credibility for that of the Hearing Examiner. *McEvily v. District of Columbia Dep't of Employment Servs.*, 500 A.2d 1022, 1024 (D.C.1985).

■■■■■ In this instance, since the Hearing Examiner erroneously denied Mr. Short's petition based on the doctrine of *res judicata,* it is unclear what role the preference for the treating physicians played. The Hearing Examiner's compensation order does not even mention the opinions of Dr. Azer and Dr. Rubenstein.[5] While it is not an error for

5. We note that the record is not clear as to how Mr. Short was referred to Dr. Azer. If, as is typical in workers' compensation cases, WMATA

referred Mr. Short to Dr. Azer, then the testimony given by Dr. Azer would constitute an admission by an agent of WMATA acting within the

the Hearing Examiner to fail to make specific findings of credibility in the compensation order, *Porter v. District of Columbia Dep't of Employment Servs.*, 518 A.2d 1020, 1023 (D.C.1986), it is, of course, the better practice to do so. The failure to make such findings in this instance makes review by an appellate court on this issue difficult, if not impossible.

For all of the above stated reasons, this matter must be reversed and remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

scope of his agency. *See District of Columbia v. Washington*, 332 A.2d 347, 350 (D.C.1975) (holding statement made by teacher concerning defective playground equipment admissible as a party admission by an employee acting within scope of employment). The conclusions reached by Dr. Azer should then be given considerable weight, as a treating physician chosen by WMATA.