Danilo J. CANLAS, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

Columbia Hospital For Women and Liberty Mutual Insurance Company, Intervenors.

No. 97–AA–1741.

District of Columbia Court of Appeals.

Argued Nov. 16, 1998.

Decided Jan. 14, 1999.

Bruce M. Bender, Rockville, MD, for petitioner.

Donald P. Maiberger, Rockville, MD, for intervenor.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a Statement in Lieu of Brief for respondent.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

FARRELL, Associate Judge:

Petitioner, a pharmacist technician, suffered injuries to his right knee and lower back when he was struck by a vehicle in his employer's parking lot on April 23, 1993. The injuries concededly arose out of and in the course of his employment. Petitioner returned to work in October 1993, but discontinued work again in December 1993 after his treating physician concluded that he was temporarily totally disabled. However, after two independent medical evaluations ("IME"s) by an orthopedic surgeon designated by the employer, a hearing examiner of the Department of Employment Services ("DOES") concluded that petitioner no longer had a disability that prevented him from returning to work in his usual occupation as of July 14, 1994, the date of the second IME. On administrative appeal from that determination, the Director of DOES affirmed.

■ Our standard of review mirrors that which the Director was bound to apply in reviewing the hearing examiner's finding that petitioner's disability had ended:

> The Director may not consider the evidence *de novo* and make factual findings different from those of the examiner; rather, she may reverse the examiner's decision only when it is not supported by substantial evidence. The Director is bound by the examiner's findings even though the [Director] may have reached a contrary result based on an independent review of the record.

*Washington Vista Hotel v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 574, 578 (D.C.1998) (citations and internal quotation marks omitted). " 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Dell v. Dep't of Employment Servs.*, 499 A.2d 102, 108 (D.C.1985) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

■ Further, while the law of the District of Columbia embodies "a preference for the

testimony of treating physicians over doctors retained for litigation purposes," the hearing examiner nonetheless "may choose to credit the testimony of a non-treating physician over a treating physician." *Short v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 845, 851 (D.C.1998). Particularly is that so if "the contradicting medical evidence from the employer was from a doctor who ... examined" the claimant, *King v. W.C.A.B. (Wendell H. Stone Co.)*, 132 Pa. Cmwlth. 292, 572 A.2d 845, 846 (1990) (cited in *Stewart v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 1350, 1353 (D.C.1992)), and, in any case, the hearing examiner must explain his decision to credit the one opinion over the other. *See Short, supra*, at 851 (recognizing examiner's right to discredit treating physician's opinion but remanding for explanation where examiner did not mention opinions of those physicians). Although an agency as finder of fact generally " 'need not explain why it favored the evidence on one side over that of the other,' " *McKinley v. District of Columbia Dep't of Employment Servs.*, 696 A.2d 1377, 1386 (D.C.1997) (citation omitted), there would be little force to the preference in favor of a treating doctor's opinion if the agency could ignore that opinion without explanation. The parties do not dispute that DOES itself requires such an explanation. *See* Br. for Pet. at 20 (quoting, for example, *Estella Whitaker v. Washington Metro. Transit Auth.*, Dir. Dkt. No. 91–12) (If hearing examiner rejects treating physician's opinion, "[s]pecific reasons for doing so must be elaborated upon in his or her findings.").

In this case, the hearing examiner expressly "accorded more weight to the opinion of the IME physician," Dr. Levitt, than to the opinions of petitioner's treating physicians, and explained why. Dr. Levitt concluded that even at the time of his first examination of petitioner in August 1993, but certainly by the time of the next examination in July 1994, petitioner had "recovered adequately" from his injuries and "more than had the capacity to return to work as a pharmacy technician." The examiner credited this conclusion as "more consistent with" the "objective evidence" of petitioner's condition than were the contrary opinions offered by petitioner's physicians. Specifically, the examiner pointed to the "diagnostic test results indicating that while claimant has some abnormalities of the lumbar spine, specifically, degenerative changes, those changes do not reflect any active disc disease and are not unusual for someone of claimant's age." Moreover, Dr. Levitt's examinations "failed to reveal any objective evidence of disability such as atrophy or wasting of the left lower extremity as should have been present had the nerve damage, weakness and giving way of the leg due to radiculopathy from nerve compression of a disc," reported subjectively by petitioner and confirmed by his physicians, actually been present.[1]

Petitioner points to the fact that not just one but four physicians who saw and tested him in the course of his treatment supported his claim of continuing disability, in contrast to Dr. Levitt's opinion derived from just two examinations. The hearing examiner knew, however, that Dr. Levitt had done more than perform his own diagnostic tests on petitioner; he had had before him and considered, with one exception, all of the reports and test results of the physicians who had treated petitioner since the accident.[2] And the examiner in turn had before him Dr. Levitt's deposition in which he explained at length why he disagreed with the diagnosis of each of those physicians. For example, with respect to the opinion of Drs. Ignacio and Lightfoot that petitioner suffered from "sympathetically mediated pain to the left lower extremity," which was "very likely ... the beginning of reflex sympathetic dystrophy involving the left lower extremity," Dr. Levitt stated:

1. The examiner also relied upon a videotape made of petitioner between April and July 1994 by a private investigator, which, "although of brief duration," showed him "performing physical acts similar to those required by his job without any apparent signs of distress, as well as no evidence of a limp consistent with the diagnosis of reflex sympathy dystrophy as suggested by Dr. Ignacio," his primary treating physician.

2. At the time he examined petitioner and reached his conclusion of no disability, Dr. Levitt did not have before him the report and film of a myelogram performed on petitioner in February 1994.

Not only do I disagree with that diagnosis, I see no foundation, I see no basis for a diagnosis, or even a suspicion, of reflex sympathetic dystrophy in this patient.

There is no evidence that he's got dysfunction to the sympathetic system, number one. The type of injury this patient has is not one traditionally associated with reflex sympathetic dystrophy. I have been an orthopedic surgeon for the last 15 years. I specialize in trauma. I trained at Maryland Shock Trauma Center for a full year, and for 15 years in town, I have covered Maryland—the Washington Hospital Center Medstar unit, and still do to this day.

I've taken care of more disastrous orthopedic and neurosurgical trauma than I daresay these gentlemen all combined ever have. And I will tell you, in that career, I have had perhaps four or five patients that have ever had a reflex sympathetic dystrophy related to their trauma. This is a diagnosis that plays no role in the case of Mr. Canlas.

Similarly, in rejecting the case impression in the report by Dr. Emick that petitioner's complaints of pain stemmed from an L5 radiculopathy, Dr. Levitt stated:

I think there's insufficient information provided to draw the conclusion that he drew, based solely on what I'm reading in his report.

... He obviously saw the patient, and used other factors not included in the report. The report alone does not provide evidence by history or physical examination that the patient has the diagnosis that [Dr. Emick] left in his impression.

Dr. Levitt explained further why he rejected the diagnosis of a lumbar radiculopathy:

In Mr. Canlas' case, his description of tingling down his leg was far from discrete. It reflected almost a generalized description of paresthesia to the lower extremity, down to his foot. It did not follow a discrete pattern and was not verifiable by physical examination or diagnostic study.

Consequently, in Mr. Canlas' case, it is my opinion, and a very firm one, ... that

he did not have a subjective report that defined a lumbar r[ad]iculopathy.

■ Whether or not this evidence would have persuaded the Director or this court to reach the same conclusion independently, it is sufficient to support the examiner's finding that petitioner was no longer disabled as of July 15, 1994.

*Affirmed.*