**CAPITOL HILL HOSPITAL, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Ryvette Richardson–Smith, Intervenor.**

**No. 97–AA–1807.**

District of Columbia Court of Appeals.

Argued Feb. 24, 1999.
Decided March 25, 1999.

---

William S. Sands, Jr., Alexandria, VA, with whom John C. Duncan, III was on the brief, for petitioner.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

David M. Schloss, Washington, DC, for intervenors.

Before FARRELL and REID, Associate Judges, and KING, Senior Judge.

REID, Associate Judge:

■ The issue presented in this case is whether the one year time limit set forth in D.C.Code § 36–324(a) bars intervenor Ryvette Richardson–Smith's claim for a schedule award of permanent partial disability benefits under the District of Columbia Workers' Compensation Act. A hearing examiner for the Department of Employment Services ("DOES") concluded that § 36–324(a) (1997) was inapplicable to her claim, and thus, the claim was not time barred. The Director of DOES affirmed. We affirm the Director's decision, and hold that the one year time limit set forth in § 36–324(a) does not bar a claim for a schedule payment of permanent partial disability benefits under § 36–308 where the issue of permanent partial disability benefits was not considered in a prior compensation claim and award for temporary total disability wage loss benefits.

## FACTUAL SUMMARY

On February 15, 1986, Ms. Richardson–Smith was employed as a nurse at Capitol Hill Hospital. She injured her left knee during the course of her employment. In 1989, in an unpublished memorandum opinion, this court affirmed a 1987 compensation order awarding her temporary total disability benefits for the periods February 25, 1986 to April 12, 1986 and April 25, 1986 to June 3, 1986.

According to the record on review, Dr. Joseph D. Linehan, Ms. Richardson–Smith's orthopedic surgeon, sent a letter to her lawyer on October 10, 1990. The letter summarized the results of Ms. Richardson–Smith's May 1, 1986 arthroscopic surgery on her left knee after a diagnosis of "a mild anterior cruciate ligament strain; possible meniscal tear." The letter also referenced Ms. Richardson–Smith's subsequent physical therapy and her use of "a neoprene knee brace during the period of her rehabilitation." Dr. Linehan stated in summary:

> She seems to have a fairly good functional result from this procedure and although the *Guide to the Evaluation of Permanent Impairment* from the American Medical Association does not address directly meniscal repair, I would interpret her as hav-

ing 10 percent permanent physical impairment of the lower extremity for "torn meniscus and/or meniscectomy."

On February 12, 1991, Ms. Richardson–Smith filed a claim for a schedule award of permanent partial disability benefits. Capitol Hill Hospital opposed the award on the ground that Ms. Richardson–Smith was actually seeking a modification of her 1987 compensation award under D.C.Code § 36–324 and her claim was barred because she did not meet the one year time limit set forth in § 36–324(a). No evidentiary hearing took place. Rather, the matter was decided based upon the parties' stipulations, exhibits, and arguments.

The hearing examiner concluded that Ms. Richardson–Smith was not seeking a modification of the 1987 compensation order; that is, she did not claim that the degree of her disability had changed. Instead, she sought a schedule award for a permanent partial ten percent disability to her lower left extremity that was not time barred by § 36–324(a).

Capitol Hill Hospital filed an application for review, asserting in part that Ms. Richardson–Smith's claim was time barred, and that the hearing examiner's decision was contrary to law and not based on substantial evidence. The Director determined that Ms. Richardson–Smith's claim raised "an entirely new issue" and was not time barred. Specifically, the Director declared that:

> The matter of claimant's permanent injury was never raised or adjudicated at the initial hearing, and since this was the first time the issue was before the agency, it is not a modification of the earlier 1987 Compensation Order. Even though claimant received an earlier award of temporary total benefits for the same knee injury, that award was for a temporary and total disability, a "loss of wages." Claimant's current request before the Hearing Examiner is for a permanent partial schedule award and is not based on claimant's loss of wages.

The Director also affirmed the hearing examiner's decision on the ground that: "[T]he Hearing Examiner's findings are supported by substantial evidence [and] are in accordance with the law." Capitol Hill Hospital filed a petition for review.

## ANALYSIS

■ "Although we are vested with the final authority on issues of statutory construction, ... [w]e must defer to an agency's interpretation of the statute which it administers ... so long as that interpretation is reasonable and consistent with the statutory language. The agency's interpretation, therefore, is controlling unless it is plainly erroneous or inconsistent with the statute." *District of Columbia v. Davis,* 685 A.2d 389, 393 (D.C.1996) (quoting *Harris v. District of Columbia Office of Worker's Compensation,* 660 A.2d 404, 407 (D.C.1995); *Taggart–Wilson v. District of Columbia,* 675 A.2d 28, 29 (D.C.1996) (other citation and internal quotations omitted)). *See also Cherrydale Heating & Air Conditioning v. District of Columbia Dep't of Employment Servs.,* 722 A.2d 31, 33 (D.C.1998). "Consequently, we sustain the agency decision, even in cases in which other, contrary, constructions may be equally as reasonable as the one adopted by the agency." *Hively v. District of Columbia Dep't of Employment Servs.,* 681 A.2d 1158, 1160–61 (D.C.1996).

Our task is to determine whether the Director's interpretation of § 36–324(a) is reasonable and consistent with the District of Columbia Workers' Compensation Act. Section 36–324(a) provides in pertinent part:

> At any time prior to 1 year after the date of the last payment of compensation or at any time prior to 1 year after the rejection of a claim ..., the Mayor may, upon his own initiative or upon application of a party in interest, order a review of a compensation case ... where there is reason to believe that a change of conditions has occurred which raises issues concerning:
>
> (1) The fact or the degree of disability or the amount of compensation payable pursuant thereto....

Capitol Hill Hospital contends, *inter alia,* that Ms. Richardson–Smith's 1991 claim for permanent partial disability benefits constitutes a request for a modification of her 1987 compensation award because it falls under

the "change of conditions" language in § 36–324(a); and because the word "compensation," as used in § 36–324 encompasses all money payable for the same injury.[1] The Hospital also challenges the reasoning set forth in the decision issued by the Director on the ground that it is inconsistent with prior agency decisions as well as cases decided under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 922 *et seq.* which governed District of Columbia workers' compensation cases until 1980.[2]

Ms. Richardson–Smith maintains that the Director's interpretation of § 36–324(a) is reasonable and consistent with the plain language of the statute and prior agency decisions. In addition, she argues that the Director's interpretation comports with the humanitarian purposes of the District of Columbia Workers' Compensation Act, and with the general principle that the Act should be construed liberally for the benefit of the employee.

By its plain words, § 36–324(a) applies to "a *review* of a compensation case" previously decided (emphasis added). Not only does the word "review" appear in § 36–324(a), but it is also present in § 36–324(b) and (c).[3] In *Short v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 845, 849 (D.C. 1998), we said:

> [T]he Act creates a specific procedure *to revisit issues previously decided by a compensation order.* Up to one year after the last disability payment, *the compensation order may be reviewed and modified* "where there is reason to believe that a change of conditions has occurred." . . . Thus, when a claimant injures himself [or

herself], returns to work, but the original injury worsens (*e.g.*, new symptoms manifest themselves), causing him to be unable to work again, the claimant may avail himself [or herself] of a *review procedure to modify the compensation order* and seek additional benefits.

(Emphasis added). Thus, § 36–324 is designed for the review of a specific compensation award covering an issue "previously decided" by that order, and is not addressed to new issues that were not decided in the prior compensation award.

That this is a reasonable interpretation of § 36–324(a) is supported by the plain words of § 36–324(c): "Upon the completion of a *review* conducted pursuant to subsection (a) of this section, the Mayor shall issue a new compensation order which may *terminate, continue, reinstate, increase, or decrease such compensation previously paid,* or award compensation [where a claim was previously rejected]" (emphasis added). The words "terminate, continue, reinstate, increase, or decrease such compensation" may reasonably be interpreted, in Ms. Richardson–Smith's case, to apply to her award for temporary total wage loss benefits and not to her new request for a schedule award for permanent partial disability. The issue of her eligibility for a schedule payment of permanent partial disability benefits was not addressed in the 1987 compensation award for temporary total disability benefits. Nor did Ms. Richardson–Smith seek to "reinstate" or "increase" her temporary total wage loss benefits.

The Director's interpretation of § 36–324 is reasonable and consistent with our often

---

1. The Hospital bases its "compensation" argument on the definition of "compensation" which appears in § 36–301(6): " 'Compensation' means the money allowance payable to an employee or to his dependents as provided for in this chapter . . . ." However, in this case, the word "compensation" must be construed within the context of § 36–324.

2. In addition, the Hospital challenges the hearing examiner's interpretation of § 36–324(a). However, " 'it is the Director's final decision, not the examiner's, which may be reviewed in this court.' " *WMATA v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472 (D.C.1996) (quoting *St. Clair v. District of Columbia Dep't of*

*Employment Servs.*, 658 A.2d 1040, 1044 (D.C. 1995) (per curiam)).

3. Section 36–324(b) states: "A *review* ordered pursuant to subsection (a) of this section shall be limited solely to new evidence which directly addresses the alleged change of conditions" (emphasis added). Section 36–324(c) provides in part: "Upon completion of a *review* conducted pursuant to subsection (a) of this section, the Mayor shall issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation previously paid, or award compensation" (emphasis added).

repeated principle that the Act must be construed liberally for the benefit of the employee for the purpose of promoting the humanitarian objectives of the Act. *See Jimenez v. District of Columbia Dep't of Employment Servs.*, 701 A.2d 837, 840 (D.C.1997) (citation omitted); *WMATA, supra* note 2, 683 A.2d at 475 (citations omitted). In interpreting the Act, the Director undoubtedly took into consideration, in keeping with the humanitarian purposes of the Act, that a claimant is not entitled to permanent injury benefits until he or she reaches "maximum medical improvement." *See Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 98 (D.C.1988). A claim for permanent disability benefits based on the attainment of "maximum medical improvement" may not ripen within a one year period after the date of the last payment of temporary total disability benefits for wage loss. In fact, "maximum medical improvement" may not be reached for years following an injury. Therefore, if the Act is construed as Capitol Hill Hospital advocates, a claimant would be ineligible for permanent injury benefits after the one year time limit set forth in § 36–324(a) expires, although she also was not eligible for them earlier. That makes no sense to us, but even if it did, the Director's interpretation is consistent with the "strong legislative policy favoring awards in arguable cases[,]" *Short, supra*, at 850 (quoting *Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564, 572 (D.C.1990) (internal citations omitted)), and with the principle that the Act should be construed liberally in favor of the employee.

Capitol Hill Hospital's reliance on agency decisions and cases arising under the Longshore and Harbor Workers' Compensation Act ("LHWCA") is misplaced. In *Turner v. National Delivery Serv.*, H & AS No. 83–67 (December 1, 1987), unlike Ms. Richardson–Smith's case, the claimant had been awarded permanent partial disability benefits based upon a 15% partial disability. He sought to reopen his case on the ground that his condition had worsened to a 20% permanent disability. The Director concluded that the claim was barred by the time limit in § 36–324(a). Nothing in the Director's decision in Ms. Richardson–Smith's case is inconsistent with *Turner* since no claim for permanent partial disability benefits was decided in Ms. Richardson–Smith's prior compensation order, as it was in *Turner*. The Director distinguished *Campbell v. Sentry, Inc.*, H & AS No. 83–362 (July 16, 1982) on the basis that there "the issue of permanency of that claimant's knee injury was raised and addressed in [an] earlier proceeding."[4] Thus, we find nothing in these agency decisions that requires application of the one year time limit in § 36–324 to Ms. Richardson–Smith's claim for a schedule payment of permanent partial disability benefits.

The LHWCA cases on which Capitol Hill Hospital relies are distinguishable, or not binding on us. In *House v. Southern Stevedoring Co.*, 703 F.2d 87 (4th Cir.1983), the claimant was awarded ongoing temporary total disability benefits from December 7, 1959 to July 9, 1962 and permanent 25% partial disability benefits covering a period of about 27 weeks.[5] In March 1975, the parties entered into a lump sum settlement for the remaining benefits, which was approved in a June 1975 compensation order. In August 1978, the claimant "filed a claim seeking permanent total disability benefits and reconsideration of the 1975 award." *House, supra*, 703 F.2d at 88. Not only had the issue of permanent disability been addressed in a prior compensation award, but the claimant in *House* specifically sought reconsideration

---

4. *Anderson v. WMATA*, H & AS No. 85–10(A) (March 17, 1987), is a decision by a hearing examiner only, and thus cannot be said to state the Director's position. In any case, there was no claim for a schedule award for permanency in *Anderson;* rather, the complainant sought continuation of the previously awarded temporary total disability benefits on a "permanent" basis. We note that in this case Ms. Richardson–Smith received temporary disability benefits only for limited periods of time in 1986.

5. Two other LHWCA cases cited by Capitol Hill Hospital also involved ongoing temporary total benefits or permanent benefits paid before the claimant sought additional benefits. *Winston v. Ingalls Shipbuilding, Inc.*, 16 BRBS 168 (BRB 1984) and *Correia v. General Dynamics Corp.*, 8 BRBS 602 (1978).

of that award. Furthermore, *House* is not binding on us because, as we said in *WMATA*, *supra* note 2, before we

> look to the interpretation of the federal [workers' compensation] statute for guidance in determining the construction of our own statute, there must be some likelihood ... that the Council [of the District of Columbia] was, in fact, aware of the judicial interpretation in question at the time the local legislation was enacted.
>
> The Council obviously cannot be deemed to have adopted the Review Board's interpretation of the LHWCA in ... a 1981 decision, because it enacted the [District of Columbia Workers' Compensation Act] in 1980.

683 A.2d at 475–76 (internal quotations and citations omitted). In addition to *House*, *Winston v. Ingalls Shipbuilding, Inc.*, 16 BRBS 168 (BRB 1984) was decided after 1980, and thus, "the Council ... cannot be deemed to have adopted the Review Board's interpretation."

In short, none of the agency decisions or the LHWCA cases cited by Capitol Hill Hospital compel us to reach a different conclusion in this case.[6] In addition, the plain words of § 36–324 and our decisions in other cases require us to affirm the Director's decision as reasonable and consistent with the Act. Therefore, we hold that the one year time limit in § 36–324(a) does not bar Ms. Richardson–Smith's 1991 claim for a schedule payment of permanent partial disability benefits under § 36–308 where the issue of permanency was not considered in her prior 1987 compensation claim and award for temporary total disability wage loss benefits. In addition, we see no reason to disturb the Director's conclusion that "the Hearing Examiner's findings are supported by substantial evidence" and that Ms. Richardson–Smith is entitled to a schedule award of permanent partial disability benefits.

For the foregoing reasons, we affirm the decision of the Director.

*So ordered.*

---

6. Capitol Hill Hospital argues that the Director reasoned erroneously in stating that the claimant's request for a permanent partial schedule award "is not based on claimant's loss of wages," contrary to our reminder in *Smith, supra*, that a schedule award *is* intended "to compensate for ... disability," 548 A.2d at 100, which the statute defines as an incapacity caused by injury resulting "in the loss of wages." D.C.Code § 36–301(8). We think, however, that the Director was merely pointing out the fact that, as *Smith* also recognized, a lump-sum schedule award looks to "presumabl[e e]ffects [on] earning capacity," *Smith*, 548 A.2d at 100, whether or not the employee actually misses work and loses wages. 548 A.2d. at 101–02.