Nellie R. WALDEN, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.**

**Washington Metropolitan Area Transit Authority, Intervenor.**

No. 97–AA–1845.

District of Columbia Court of Appeals.

Submitted Feb. 24, 2000.

Decided Sept. 14, 2000.

---

George E. Swegman, Washington, DC, was on the brief for petitioner.

Alan D. Sundburg, Washington, DC, was on the brief for intervenor.

Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Petitioner, Nellie Walden, seeks review of a final decision of the Department of Employment Services ("DOES") affirming a hearing examiner's denial of her application to modify a previously issued compensation order issued under the District of Columbia Workers' Compensation Act ("the Act"), D.C.Code §§ 36–301 to 36–345 (1997). Ms. Walden's application was denied after the hearing examiner reviewed her proffered evidence under section 36–324 of the Act. The examiner concluded that Ms. Walden's application was barred by the doctrine of *res judicata* because her claim for benefits had been previously litigated between her employer and herself. The hearing examiner also ruled that Ms. Walden did not proffer sufficient evidence to show a change in her medical condition or any other circumstance that would support modification of the compensation order. The Director of DOES ("the Director") affirmed the hearing examiner's ruling. We reverse the Director's decision and remand the case for further proceedings.

I

Ms. Walden worked as a bus driver for the Washington Metropolitan Area Transit Authority ("WMATA"). On October 27, 1987, the bus she was driving was involved in an accident, and Ms. Walden suffered injuries to her left knee and left ankle which prevented her from working. She sought workers' compensation benefits from WMATA, and WMATA paid her such benefits from September 8, 1988, to December 29, 1989, when she returned to work.

In February 1990 Ms. Walden was unable to continue working and filed a claim with DOES for additional compensation. She did not go back to work again until July 30, 1990. At a subsequent hearing on her claim, Ms. Walden testified and offered into evidence medical reports from Dr. Hampton Jackson, her treating physician. Dr. Jackson reported that Ms. Walden suffered from a 15 percent permanent disability of the left knee and a 15 percent permanent disability of the left ankle. He also concluded that she was "not fit on a permanent basis to return to her previous job with [WMATA]." [1]

In opposing the claim, WMATA offered the medical reports of Dr. David Dorin and Dr. Louis Levitt, two physicians who had independently examined Ms. Walden. Both doctors concluded that Ms. Walden had sustained physical injuries as a result of the accident and that she was capable of resuming work as a bus driver. However, their opinions differed on the degree of her physical disability. Dr. Dorin opined that Ms. Walden had suffered a 5 percent permanent impairment of the knee and a 10 percent impairment of the ankle, whereas Dr. Levitt found no permanent impairment whatsoever.

In his compensation order, the hearing examiner found that Ms. Walden had reached maximum medical improvement as of May 2, 1990 (the date of Dr. Jackson's report), and awarded her temporary total disability benefits ending on that date.[2] The examiner also ruled that Ms. Walden's injury was not a scheduled loss under D.C.Code § 36–308(3)(A)–(U) because "the physician's rating has not been translated to the leg." Accordingly, Ms. Walden was found to be ineligible for disability benefits for the permanent partial loss of the use of her leg.

Ms. Walden appealed to the Director from the hearing examiner's decision, contending that the examiner had erred in denying her scheduled benefits on the ground that her injury did not amount to a loss of a scheduled member. The Director, however, affirmed the decision of the hearing examiner on May 22, 1995, stating in her order:

> [I]n order to be awarded benefits under the schedule, there must be disability to a schedule member. As the record is devoid of any evidence that claimant has a disability to her leg or foot which are both schedule members, the hearing examiner was correct in denying claimant disability benefits based on the schedule.

Instead of seeking review of the Director's decision in this court, Ms. Walden elected to apply for a modification of the compensation order pursuant to section 36–324 of the Act.[3] She filed such an appli-

---

1. Ms. Walden represents in her brief that Dr. Jackson also stated in a report dated August 14, 1989, that she had reached "maximum medical improvement with respect to the knee and that she would have a permanent disability." She also asserts that Dr. Jackson said essentially the same thing in a later deposition. Unfortunately, neither the August 14 medical report nor the deposition has been made part of the record, so Ms. Walden must bear the burden of their omission. *See Cohen v. Rental Housing Comm'n,* 496 A.2d 603, 605–606 (D.C.1985); *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982).

2. The examiner also awarded her permanent partial disability benefits from May 2 to June 1, 1990, and again from July 6 to July 30, 1990. That portion of the award is not at issue in this case.

3. D.C.Code § 36–324 provides in pertinent part:

   (a) At any time prior to one year after the date of the last payment of compensation or at any time prior to one year after the rejection of a claim ... the Mayor [or his designee] may, upon his own initiative or upon application of a party in interest, order a review of a compensation case ... where there is reason to believe that a change of conditions has occurred which raises issues concerning:
     (1) The fact or the degree of disability or the amount of compensation payable pursuant thereto; or
     (2) The fact of eligibility or the amount of compensation payable pursuant to § 36–309.
   (b) A review ordered pursuant to subsection (a) of this section shall be limited solely

cation on June 5, 1995, requesting a new hearing so that she might submit medical evidence to demonstrate permanent disability to her leg or foot, or both, under section 36–308 of the Act. Ms. Walden argued that the finding of no scheduled disability in the prior compensation order was the type of legal or factual matter intended to be the subject of modification under section 36–324.

The hearing examiner denied Ms. Walden's application without a hearing on the ground that she had failed to present new evidence sufficient to show that a change of condition had occurred, as required by section 36–324(b). Therefore, the examiner ruled, there was no reason to hold a hearing on Ms. Walden's request to modify the compensation order. The examiner also held that the proffered evidence did not "state anything to show a disability or loss of function in fact of the leg or foot...." Ms. Walden appealed once again to the Director, who affirmed the hearing examiner's decision. She now seeks review in this court.

II

WMATA contends that, because the nature and extent of Ms. Walden's injuries have been previously litigated between the parties, the doctrine of *res judicata* bars Ms. Walden's request for modification of the original compensation order. Ms. Walden argues, to the contrary, that in the particular circumstances of this case, *res judicata* does not foreclose the relief that she seeks.

■ When a claim of any kind has been finally adjudicated on the merits, *res judicata* precludes the relitigation of the same claim between the same parties in subsequent litigation. *See Short v. District of Columbia Dep't of Employment Services,* 723 A.2d 845, 849 (D.C.1998);

*Oubre v. District of Columbia Dep't of Employment Services,* 630 A.2d 699, 702–703 (D.C.1993); *Gilles v. Ware,* 615 A.2d 533, 538 (D.C.1992); *Henderson v. Snider Brothers, Inc.,* 439 A.2d 481, 485 (D.C. 1981) (en banc). Parties are also precluded, under the related doctrine of collateral estoppel, from relitigating issues of law or fact which have actually been decided in an earlier proceeding between the parties. *Goldkind v. Snider Brothers, Inc.,* 467 A.2d 468, 473 (D.C.1983). This court has held that *res judicata* and collateral estoppel are applicable in administrative proceedings when "the agency is acting in a judicial capacity, resolving disputed issues of fact properly before it which the parties have an adequate opportunity to litigate." *Oubre,* 630 A.2d at 703. The parties do not dispute, and we agree, that the original compensation order in this case, which was affirmed by the Director in 1995, resulted from the agency's "acting in a judicial capacity." Thus Ms. Walden is barred by *res judicata* from relitigating her claim unless it can be shown that the doctrine does not apply.

■ This court has recognized, however, that in the field of administrative law *res judicata* is "not encrusted with the rigid finality that characterizes the precept in judicial proceedings." *Oubre,* 630 A.2d at 703 (citation omitted). *Res judicata* "may be overcome" if, for example, there is "manifest error in the record of the prior [administrative] proceeding...." *Id.* Thus we held in *Oubre* that a compensation award based upon an erroneous wage figure in a prior proceeding resulted in "manifest injustice" because the doctrine of *res judicata* prevented the petitioner from correcting this mistake by filing a subsequent claim, thereby depriving him of the full compensation to which he was entitled. *Id.* at 704. We also held in

to new evidence which directly addresses the alleged change of conditions.

(c) Upon the completion of a review conducted pursuant to subsection (a) of this section, the Mayor [or his designee] shall

issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation previously paid, or award compensation.

*Short,* on facts very similar to those presented here, that D.C.Code § 36–324 "creates a specific procedure to revisit issues previously decided by a compensation order." 723 A.2d at 850.

> Thus, when a claimant injures himself, returns to work, but the original injury worsens (*e.g.,* new symptoms manifest themselves), causing him to be unable to work again, the claimant may avail himself of a review procedure to modify the compensation order and seek additional benefits.

*Id.* (citing section 36–324). Thus *Short* establishes that section 36–324 creates an exception to the doctrine of *res judicata* in cases that fall within its purview. *See Capitol Hill Hospital v. District of Columbia Dep't of Employment Services,* 726 A.2d 682, 685 (D.C.1999) (" § 36–324 is designed for the review of a specific compensation award covering an issue 'previously decided' by that order").

From the case law we conclude that there are two exceptions to the doctrine of *res judicata* which may be applicable to this case. Under *Oubre* a prior administrative ruling may be reconsidered, at least in a workers' compensation case,[4] by the agency that issued it if the record of the earlier proceeding reveals "manifest error," 630 A.2d at 703, or "manifest injustice," *id.* at 704, or "material misconceptions of [applicable] legal principles," *id.* at 705. *Short* recognized a more specific exception to the doctrine, based entirely on

D.C.Code § 36–324, which makes it possible in certain circumstances "to revisit issues previously decided by a compensation order." 723 A.2d at 850. Considering Ms. Walden's assertion that *res judicata* should not bar her present claim, we must determine whether that claim falls within either the *Oubre* exception or the *Short* exception. To that task we now turn our attention.

## III

The record shows that Ms. Walden's claim for permanent partial disability was denied, at least in part, because the disability was attributed to her knee and ankle rather than to her leg. The knee and ankle are not listed as scheduled members in D.C.Code § 36–308, but section 36–308(3)(B) specifically mentions the leg as a scheduled member.[5] Thus it appears that the hearing examiner interpreted section 36–308 to exclude the knee as part of the leg. Such an interpretation of the statute is not only contrary to common sense but inconsistent with this court's case law, which recognizes that the knee is part of the leg. *See Capitol Hill Hospital,* 726 A.2d at 687 (affirming "a schedule payment of permanent partial disability benefits under § 36–308" for a disability of the knee); *cf. Cherrydale Heating & Air Conditioning v. District of Columbia Dep't of Employment Services,* 722 A.2d 31, 35–36 (D.C.1998) (affirming denial of additional temporary total disability benefits for a disability of the knee, after a previous

---

4. Our decision in *Oubre* was based to a considerable extent on the principle, expressed in many of our cases, that the Workers' Compensation Act "is to be liberally construed to effectuate its purpose." *Oubre,* 630 A.2d at 704 (citing *Ferreira v. District of Columbia Dep't of Employment Services,* 531 A.2d 651, 655 (D.C.1987)); *accord, e.g., Capitol Hill Hospital,* 726 A.2d at 686 ("the Act should be construed liberally in favor of the employee"). Whether the holding of *Oubre* is applicable outside the area of workers' compensation is a question we need not address in this case. *But see Oubre,* 630 A.2d at 703–704.

5. D.C.Code § 36–308(3) provides:

In case of disability partial in character but permanent in quality, the compensation shall be 66–2/3 % of the employee's average weekly wages which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with paragraph (2) or (4) of this subsection respectively, and shall be paid to the employee, as follows:

   \*     \*     \*     \*     \*     \*

(B) Leg lost, 288 weeks' compensation;
(C) Hand lost, 244 weeks' compensation;
(D) Foot lost, 205 weeks' compensation. . . .

schedule payment for a permanent partial disability of the leg).[6] To avoid any further confusion about the matter, we now hold explicitly that the knee is part of the leg, and that a permanent partial disability of the knee is therefore compensable as a disability of a scheduled member under D.C.Code § 36–308(3)(B).

■ The hearing examiner, in his original compensation order, ruled that because Dr. Jackson's 15 percent disability rating of the knee and ankle "ha[d] not been translated to the leg," Ms. Walden was not eligible for a schedule award for permanent partial disability. Given the firmly established principle that the Workers' Compensation Act "should be construed liberally in favor of the employee," *Capitol Hill Hospital,* 726 A.2d at 686, we conclude that this was "manifest error" within the meaning of *Oubre,* 630 A.2d at 703, and that at least with respect to the knee,[7] Ms. Walden is entitled to reconsideration of that ruling, *res judicata* notwithstanding.

■ But our decision in this case need not turn on whether a knee is or is not part of a leg. D.C.Code § 36–324, as interpreted in *Short,* specifically provides for the review of issues previously decided in compensation orders and, when appropriate, for the modification of such orders. See note 3, *supra.* Before granting a hearing under section 36–324, the Mayor's designee (in this instance, the hearing examiner) is required to make "a preliminary determination that there is reason to believe that a change of conditions has occurred." *Snipes v. District of Columbia Dep't of Employment Services,* 542 A.2d 832, 834 n. 4 (D.C.1988). What we have before us for review is the hearing examin-

er's preliminary determination, upheld by the Director, concerning the sufficiency of Ms. Walden's proffered evidence to demonstrate a change in either "the fact or the degree of [her] disability." D.C.Code § 36–324(a)(1). WMATA contends that the examiner (and the Director) correctly ruled that Ms. Walden was not entitled to a hearing on her application under section 36–324 because she failed to make the requisite threshold showing that her condition had changed. We disagree.

■ For purposes of her entitlement to a hearing, Ms. Walden's burden of demonstrating a change of condition under section 36–324 is a light one. The Act includes a presumption that work-related injuries are compensable under it, and we have expressly held that the presumption applies in a review proceeding under section 36–324. *Short,* 723 A.2d at 851. "Therefore, where a claimant files for a review of benefits due to an alleged changed degree of disability, it is presumed under the Act that the changes stem from the initial work-related injury and are covered by the Act." *Id.* In order to benefit from this presumption in this case, Ms. Walden need only offer *some evidence* of (1) a change in the fact or the degree of disability, and (2) some initial work-related injury that caused the previous disability (which in this case is undisputed). *Id.* We are satisfied that Ms. Walden met her burden. In support of her request for a hearing, she offered a medical report from Dr. Jackson indicating, at least *prima facie,* the presence of new symptoms and a significant increase in the extent of her disability—in other

---

6. Previously, in *Smith v. District of Columbia Dep't of Employment Services,* 548 A.2d 95, 102 (D.C.1988), we had held that an employee who "receives a schedule award for permanent partial disability under D.C.Code § 36–308(3) . . . is not entitled to temporary total disability benefits under § 36–308(2) for future wage loss arising out of the same injury," upholding the Director's ruling to the same effect.

7. We have no occasion here to decide whether the ankle should be regarded as part of the leg, part of the foot, or neither. On remand, however, that question may be addressed by the hearing examiner or the Director, or both, if it comes up.

words, a change in both "the fact" and "the degree" of disability.

In *Snipes*, on which WMATA relies, we upheld a hearing examiner's ruling, later affirmed by the Director, that there was "no reason to believe that a change of condition had occurred," specifically, nothing to show that the claimant's newly manifested psychological symptoms were related to her previous back injury. 542 A.2d at 835. The examiner concluded that the causal connection between the claimant's new symptoms and a back injury more than two years earlier which left no objective residual evidence was too remote and speculative to support her request for a hearing. The instant case is different. Dr. Jackson's report dated September 26, 1995, clearly identified at least one new symptom attributable to Ms. Walden's previous injury: hypermobility of the leg muscles which all parties conceded to have been previously injured, something that had not been mentioned in Dr. Jackson's previous reports.[8] More importantly, the 1995 report also revealed a significant change in the degree of her disability. Previous reports from Dr. Jackson had said that Ms. Walden had a 15 percent partial permanent disability of her knee and a 15 percent partial permanent disability of her ankle. In the 1995 report, however, the doctor stated that she now had a permanent partial disability of "35 percent of the left lower extremity (leg)." This was sufficient to require a hearing on Ms. Walden's new claim.

The purpose of the preliminary determination under section 36–324 is "to examine evidence which *could establish,* if credited, changed conditions." *Snipes,* 542 A.2d at 834 n. 4 (emphasis added). Absent unusual circumstances, the credibility of that evidence is not a factor to be considered in this preliminary phase. We hold that the evidence proffered by Ms. Walden meets

the *Snipes* test. She still bears the additional burden of establishing the credibility of her evidence at the hearing which we now direct DOES to hold. We express no view on whether Ms. Walden may ultimately be entitled to the relief that she seeks, namely, a change in the terms of her compensation order. At this stage, however, she is at least entitled to a hearing under section 36–324.

The decision of the Director is therefore reversed, and this case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

8. It is not entirely clear whether hypermobility is a new symptom or merely an old symptom which Dr. Jackson neglected to mention earlier, but at this stage Ms. Walden is entitled to the benefit of the doubt on this point.

Since we are ordering a remand, we expect that any dispute as to whether the hypermobility in Ms. Walden's left quadriceps is a new or an old symptom will be resolved in the remand proceedings.