**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART- MENT OF EMPLOYMENT SER- VICES,** Respondent,

Wayne Young, Intervenor.

No. 99–AA–7.

District of Columbia Court of Appeals.

Argued Feb. 3, 2000.
Decided April 5, 2001.

Alan D. Sundburg, for petitioner.

David M. Schloss, for intervenor.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before FARRELL, REID and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Petitioner Washington Metropolitan Area Transit Authority (WMATA) appeals a decision of the Director of the Department of Employment Services(DOES) upholding an award of workers' compensation benefits to Wayne Young. The benefits were awarded on Young's application to modify an earlier order in light of a subsequent deterioration in Young's mental health. WMATA contends that the Director erred in reversing a finding in the earlier order that Young's psychiatric disability was not work-related; and in affirming a finding not supported by substantial evidence, that Young now suffers from a work-related brain disorder characterized by paranoia and other severe symptoms. We conclude that neither contention entitles WMATA to relief, and accordingly we affirm the decision of the Director in this case.

## I.

Wayne Young was working for WMATA as a track laborer on June 23, 1991, when he touched an energized third rail and received a mild electrical shock. Young was hospitalized for two and a half days for observation and evaluation. No burns or other abnormalities were found, and Young was discharged with instructions to avoid strenuous exercise and take a week off from work. Young did not return to work, however, and WMATA voluntarily paid temporary total disability benefits to him for approximately two months after the accident. WMATA then discontinued the disability payments, and Young filed a claim for workers' compensation benefits with DOES, asserting that as a result of the accident he was suffering from ongoing physical disability and post-traumatic stress disorder (PTSD).

After holding a hearing in February 1992, and receiving evidence including Young's testimony about his physical impairments and mental complaints, a surveillance videotape, and the testimony of neurological and psychological experts on both sides of the issue, the hearing examiner denied Young's claim in a Compensation Order issued on June 9, 1995 ("First Compensation Order"). The examiner did not credit Young's testimony regarding his alleged ailments, finding it "hyperbolic" and contradicted by the surveillance video-

tape and objective medical and psychiatric tests. The examiner also chose not to accept the diagnosis of PTSD offered by Young's treating psychologist, Dr. Podd, and his neurologist, Dr. Kurzrok, in part because they relied on what Young reported to them. Instead, the examiner credited the opinion of Dr. Schulman, a psychiatrist who evaluated Young at the request of WMATA, that Young "was attempting to imitate the symptoms he felt an individual who had been electrocuted would experience." The examiner concluded that any disability related to the June 23, 1991, incident had "resolved" by August 7, 1991, and that "any ongoing disability [Young] may have is not causally related to" the June 23, 1991, incident.

Young filed an application with the Director for review of the First Compensation Order. Pursuant to D.C.Code § 36–324(a) (1997), Young also applied for a modification of that order on account of change in his psychological condition following the February 1992 hearing. Before addressing the application for review, the Director ordered a limited remand of the case so that the Hearings and Adjudication Section of DOES could address Young's modification request. A hearing was eventually held on that request before a second hearing examiner, who issued her Compensation Order on April 2, 1998 ("Second Compensation Order").

In the Second Compensation Order, the examiner concluded that Young had presented material new evidence of a change in his condition through the testimony of Dr. Smoller, a psychiatrist who started seeing Young on August 6, 1996. According to Dr. Smoller, while Young may have had PTSD initially following his accident, the symptoms of that illness had abated, and Young was now suffering from a progressively worsening personality change and mood disorder that manifested itself in psychotic, bizarre and disabling symptomatology, including paranoia, memory and thought disorders, depression, inappropriate affect, and outbursts of anger and irritability. Dr. Smoller believed that the degree of pathology that Young exhibited could only be explained by a diagnosis of organic brain damage: "The distractibility, the inability to focus, the need for repetition, the difficulty with memory, all are significant to me in terms of diagnosing somebody as organic." Dr. Smoller further believed that Young's organic injury was causally related to the electric shock he received on June 23, 1991. Dr. Smoller considered it significant that Young "was fine" before the accident but "not fine" after it, and that there was no evidence that Young suffered any other trauma at around that time. Although Young was on psychotropic medication and receiving psychological therapy on a weekly basis, Dr. Smoller opined that Young was too paranoid to return to work, and could not concentrate sufficiently to keep a job. Dr. Smoller also thought that no one would hire Young because of his bizarre behavior and other conspicuous symptoms.

In relying on the opinion of Dr. Smoller, the hearing examiner rejected the contrary opinion of Dr. Spodak, a psychiatrist who had examined Young and reviewed his medical records at the request of WMATA. Although Dr. Spodak believed that Young was "faking his symptoms and malingering," the examiner credited Dr. Smoller's rejoinder that Young would be unable to fake certain parts of the psychiatric evaluation and could not have sustained any false symptoms or malingered in so disruptive and psychotic a fashion over a seven year period. The examiner also noted that Dr. Smoller's opinion was confirmed by Young's wife, who testified in detail about the changes in Young's behavior since February 1992.

Having found that Young's condition had changed, and that his current condition

was causally related to the electric shock that he received on June 23, 1991, the hearing examiner modified the First Compensation Order to award Young temporary total disability benefits from August 6, 1996, onward, together with medical expenses and interest on accrued benefits.

The Director consolidated WMATA's appeal of the Second Compensation Order with Young's appeal of the First Compensation Order, and issued his decision on December 8, 1998. Although the Director affirmed the first order, he reversed the finding that any on-going disability after August 7, 1991 was not work-related. The Director reversed that finding on the ground that WMATA had not presented substantial evidence in the first hearing to overcome the statutory presumption of a causal connection between Young's accident and his subsequent psychological impairments.[1]

The Director affirmed the second order in its entirety, rejecting WMATA's argument that Young was estopped from seeking modification of the first order by the examiner's finding that his on-going disabilities were not work-related. Having reversed that finding as unsupported by substantial evidence, the Director concluded that the first order was subject to modification pursuant to D.C.Code § 36–324. The Director also concluded that the Second Compensation Order was supported by substantial evidence, primarily the expert opinion testimony of Dr. Smol-

ler. Upholding the hearing examiner's decision to credit the opinion of Dr. Smoller over that of Dr. Spodak, the Director stated that "when confronted with conflicting medical opinions, the Hearing Examiner is free to draw any reasonable inference from the evidence presented.... Dr. Smoller's opinion was properly accepted because it is well reasoned and based on a proper foundation of evidence when viewing the record as a whole."

## II.

WMATA contends that the Director erred in reversing the finding in the First Compensation Order that Young's on-going disabilities were not work-related, and in determining that the Second Compensation Order was supported by substantial evidence. We conclude that we need not review the Director's decision with respect to the first order,[2] because whether or not the non-work-relatedness finding in that order was supported by substantial evidence, the order was subject to modification pursuant to D.C.Code § 36–324 in light of the new evidence of disability that Young proffered. We further conclude that the Director correctly affirmed the second order as being supported by substantial evidence.

Young applied for a modification of the First Compensation Order on the basis of "new evidence" of a "change of conditions" concerning "the fact or the degree of disability." D.C.Code § 36–324(a)(1) and (b). WMATA argues that any change in

---

**1.** See D.C.Code § 36–321(1). The Director reasoned that WMATA's psychiatrist, Dr. Schulman, never opined that Young's psychological condition was not work-related. Rather, the Director found, Dr. Schulman opined that Young suffered from a factitious disorder (a disorder in which the patient intentionally feigns nonexistent symptoms), "precipitated" by the June 23, 1991, accident, which "could be superimposed on an underlying adjustment disorder or post-traumatic stress disorder." In his testimony Dr. Schulman con-

ceded that it was "certainly possible" that Young had "both the factitious disorder and an underlying adjustment disorder or post-traumatic stress disorder."

**2.** Young has not asked this court to review the denial of benefits under the First Compensation Order for the period from August 7, 1991, to August 6, 1996 (when benefits resumed pursuant to the Second Compensation Order).

Young's disability was immaterial if, as the first hearing examiner found, there was in any event no causal relationship between Young's accident at work on June 23, 1991, and his (post-August 7, 1991) disability. This argument is superficially plausible, but we think it rests on a misreading of the scope of the first order and on an underestimation of Young's modification claim.

Our reading of the First Compensation Order shows that the examiner found that Young may have been disabled as a result of his accident at work, but that his disability resolved itself within a few weeks (i.e., by August 7, 1991); and that the disability that Young claimed to have thereafter, between August 7, 1991, and February 1992 (the time of the first hearing), was not related to his accident at work. These findings do not mean that Young *never* had a disability that was caused by the June 23, 1991, accident, nor do they mean that any disability manifesting itself subsequent to the February 1992 hearing could not possibly be linked to the injury he sustained in that accident. The findings left open the possibility that Young had some initial work-related disability (for which WMATA voluntarily paid benefits for several weeks), and the further possibility that Young might develop a work-related disability in the future (for which he could seek benefits through a modification of the compensation order). According to Dr. Smoller, and as found by the second hearing examiner, the latter possibility materialized: subsequent to the first hearing Young began to manifest serious and disabling psychiatric problems—paranoia and other thought disorders—caused by organic damage related to the electric shock that Young received at work in 1991.

In *Short v. District of Columbia Depar't of Employment Servs.*, this court held that just such a development would constitute a change of conditions concerning the fact of disability that would justify modifying a compensation order pursuant to § 36–324. *See* 723 A.2d 845, 850–52 (D.C.1998). We rejected the argument that, where the initial order had concluded that the claimant's disability was not caused by a work-related accident, the doctrines of *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) would bar a modification. *See id.* at 849–50. The claimant, Short, was a driver who injured himself when the seat of his bus snapped back. He was awarded temporary benefits for his resulting lower back injury, but was denied benefits for the radiating pain he experienced in his legs and feet, on the ground that this pain was attributable to a diabetic condition not related to his job injury. Some years later, however, after the pain and numbness in his feet increased and became disabling, Short applied for a modification of the original compensation order. He presented medical evidence that the aggravated symptoms involving his legs and feet were not related to his diabetes, but to another syndrome that was attributable to the trauma of his work-related injury. The hearing examiner and the Director denied the modification request, because Short's complaints of pain in his legs and feet were "similar in kind, if not degree," to his complaints in the hearing on the original compensation claim, which were rejected then as not work-related. *Short,* 723 A.2d at 848. This court reversed.

We stated that while *res judicata* and collateral estoppel apply in administrative agency proceedings,[3] § 36–324 sets forth

---

**3.** *See Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 703–04 (D.C.1993).

"a specific procedure to revisit issues previously decided by a compensation order." *Id.* at 850. *Res judicata* did not bar Short's modification request, we said, because that doctrine "would apply only if Mr. Short were trying to file a new workers' compensation claim for the same injury, based on the same accident, using evidence that should have been discovered with due diligence." *Id.* Nor, we said, did collateral estoppel bar Short's claim that similar symptoms with a different diagnosis represented a worsening of the claimant's work-related injury. "That the symptoms may be similar does not invoke the doctrine [of] collateral estoppel where they are not identical." *Id.*

■ Our decision in *Short* is controlling here. As in that case, the fact that the examiner who heard Young's claim initially found that his alleged PTSD was not work-related did not bar Young's later claim under § 36–324 that his aggravated mental illness, with a different diagnosis, did represent the subsequent emergence of a work-related disability. It is therefore immaterial whether the Director was correct or not in reversing the initial finding of non-work-relatedness; either way, the issue to be confronted is simply whether Young did in fact present a meritorious case for modification of the First Compensation Order in accordance with the requirements of the statute. To that issue we now turn.

■ "Like the Director, this court must affirm the compensation order if the findings of fact contained therein are supported by substantial evidence in the record as a whole and the law has been properly applied." *Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 278, 280 (D.C.2000). Thus, we " 'will affirm an agency finding of fact or conclusion of law so long as it is supported by substantial evidence notwithstanding that there may be contrary evi-

dence in the record, as is often the case.' " *Clark v. District of Columbia Dep't of Employment Servs.*, 743 A.2d 722, 726 (D.C.2000) (quoting *Davis–Dodson v. District of Columbia Dep't of Employment Servs.*, 697 A.2d 1214, 1218 (D.C.1997)). In evaluating conflicting medical testimony, as in weighing evidence generally, the hearing examiner has wide latitude. The examiner is "entitled to draw reasonable inferences from the evidence presented," and her decisions "are especially weighty when they involve credibility determinations." *George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 566 (D.C.1985). Ordinarily, moreover, the examiner is not required to explain why she credited one expert over another. *See Ferreira v. District of Columbia Dep't of Employment Servs.*, 667 A.2d 310, 312, 314 n. 5 (D.C. 1995).

■ In the Second Compensation Order, the examiner relied primarily on the expert opinion testimony of Dr. Smoller to find that Young presented new evidence of a deterioration in his mental condition that demonstrated the existence of a work-related disability. It is undisputed that Dr. Smoller's evaluation did constitute "new evidence" to support modification of a compensation order within the meaning of § 36–324. Provided that it was proper for the examiner to credit it, Dr. Smoller's testimony also constituted substantial evidence to support the examiner's findings.

■ WMATA argues, however, that the Director erred in upholding those findings because the examiner failed to explain why she credited the opinion of Dr. Smoller over the opinion of Dr. Spodak that Young was malingering. WMATA recognizes that such an explanation usually is not required, but argues that "when a party questions the fundamental factual bases for an expert opinion, the Hearing Exam-

iner must offer some explanation for why the expert's conclusions are nonetheless credible." *Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564, 571 (D.C.1990) (requiring agency to explain why it credited an expert who based his opinion on "an incorrect, critical factual assumption that petitioner had suffered a heart attack"). Assuming *arguendo* that WMATA did question the "fundamental factual bases" of Dr. Smoller's opinion, we are satisfied that the hearing examiner adequately explained why she credited that opinion over the contrary opinion of Dr. Spodak. *See Spartin*, 584 A.2d at 571. The examiner stated that Dr. Smoller had evaluated and tested Young, had examined all of Young's medical records since the date of his accident, and had discussed Young's condition with his treating psychologist (Dr. Podd) and with Young's wife. The examiner noted that the testimony of Young's wife about the changes in his behavior since the first hearing on his disability compensation claim corroborated Dr. Smoller's opinion that Young suffered from a progressively worsening disorder. The examiner described in detail why Dr. Smoller believed that Young's disability was organic in nature, why it was causally related to his 1991 work accident, and why it prevented him from returning to work. Finally, the examiner found persuasive Dr. Smoller's opinion that Young would not be able to fool certain parts of the psychiatric evaluation, and that Young would not be able to fake mental illness and malinger so disruptively for a long period of time.

WMATA advances a number of reasons why Dr. Smoller's opinion nonetheless should not have been credited. Given the leeway accorded to the hearing examiner, WMATA bears a heavy burden to overturn the examiner's determination. First, WMATA points out that Dr. Smoller did not review the deposition testimony from the first hearing of Dr. Schulman and the neurologists who examined Young. This omission does not render Dr. Smoller's diagnosis incredible or without foundation. Dr. Smoller did review the reports prepared by Dr. Schulman, the neurologists, and Dr. Spodak, and he was well aware that WMATA's experts opined that Young was malingering or had a factitious disorder. Second, WMATA asserts that Dr. Smoller based his diagnosis on a false assumption, that Young lost consciousness after he received an electric shock from touching the energized third rail. We find, however, that Dr. Smoller's testimony does not suggest that he definitively determined that Young experienced a loss of consciousness or, more importantly, that he relied on that supposed fact in making his diagnosis.[4]

Third, WMATA argues that Dr. Smoller relied on Young and Dr. Podd in formulating his conclusions, despite the fact that the first hearing examiner found Young to be "hyperbolic" and unreliable, and did not credit Dr. Podd's diagnosis that Young

---

4. Dr. Smoller testified as follows:

Q. What is your understanding as to whether Mr. Young suffered any loss of consciousness after this contact with the third rail?

A. My belief is there was a brief period—no, he did not lose consciousness except—let me amend that because I was just looking back at the report. He didn't lose consciousness directly. He lost consciousness subsequently, was carried by a friend up some stairs.

Q. That was based upon the reports of Dr. Kurzrok?

A. Yes.

Q. Did Mr. Young advise you that he lost consciousness following contact with that rail?

A. He couldn't give me a straight answer.

If Young's loss of consciousness had been integral to Dr. Smoller's diagnosis, it is unlikely that he would have been so uncertain regarding the existence of that fact.

suffered from PTSD. But Dr. Smoller did not adopt Dr. Podd's diagnosis as his own; in the process of making a different diagnosis (that Young suffered from an organic disorder) Dr. Smoller merely incorporated information that Dr. Podd supplied. Similarly, Dr. Smoller considered the unreliability of Young's presentation, recognizing that other physicians had found Young to be exaggerating and malingering. In concluding that Young was not faking, Dr. Smoller emphasized not only his own experience in evaluating subjects, but also and especially the confirmation furnished by Young's wife, who described her own detailed observations of Young over an extended period of time. As his wife she may have been biased; but it was nonetheless not unreasonable for Dr. Smoller, like the second hearing examiner, to find her credible.

For these reasons, we are not persuaded by WMATA's contention that in accepting the opinion of Dr. Smoller, the second hearing examiner "effectively ignored the factual and evidentiary findings reached at the first hearing of this matter." The second examiner could reasonably credit Dr. Smoller's opinion without dismissing the first examiner's determinations. Dr. Smoller's description of a deterioration in Young's mental condition since the first hearing, caused by organic changes attributable to Young's accident on the job, was not irreconcilably inconsistent with those earlier findings. As the examiner drew reasonable inferences from the conflicting medical testimony in the record, and adequately explained why she credited the opinion of Dr. Smoller rather than the contrary opinion of Dr. Spodak, we are satisfied that her findings were supported by substantial evidence.

In conclusion, we hold that Young's application to modify the First Compensation Order, on the basis of new evidence demonstrating a work-related change in his psychiatric condition that disabled him from further employment, was proper under der D.C.Code § 36–324, and not precluded by the earlier finding that his alleged disability was not work-related. We further hold that the Director did not err in concluding that the second hearing examiner's order granting Young's modification request was supported by substantial evidence in the record. We therefore affirm the Director's decision.

*So ordered.*