*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-AA-0652

CHRISTOPHER HONEMOND, PETITIONER,

v.

D.C. DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

GEORGETOWN UNIVERSITY, *et al.*, INTERVENORS.

On Petition for Review of a Decision and Order of
the District of Columbia Department of Employment Services
Compensation Review Board
(CRB No. 21-054)

(Argued October 27, 2022       Decided June 15, 2023)

*Krista N. DeSmyter* for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia (at the time the statement was filed), *Caroline S. Van Zile*, Solicitor General, and *Ashwin P. Phatak*, Principal Deputy Solicitor General, filed a statement in lieu of brief for respondent.

*Jonathan M. Marlin* for intervenors.

Before BLACKBURNE-RIGSBY, *Chief Judge*, DEAHL, *Associate Judge*, and FISHER, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*:  Petitioner Christopher Honemond filed a workers' compensation claim for disability benefits stemming from a work incident that occurred on June 30, 2016.  Intervenors are Mr. Honemond's employer, Georgetown University, and its insurance carrier, Travelers Insurance Company.  Previously, this court affirmed a compensation order on remand concluding that Mr. Honemond had failed to establish that he has a disabling mental condition causally related to the work incident.  *Honemond v. D.C. Dep't of Emp. Servs.*, No. 18-AA-635, Mem. Op. & J. (D.C. July 29, 2019).

Mr. Honemond sought modification of this order, pursuant to D.C. Code § 32-1524 ("Modification of awards").  In his modification claim, he alleged that he suffers from Post-Traumatic Stress Disorder ("PTSD"), Panic Disorder, and Generalized Anxiety Disorder.  He separately alleged that he has a permanent partial physical disability in his arm.  The Administrative Law Judge ("ALJ") denied both claims, concluding that Mr. Honemond had neither shown that a change of conditions had occurred as to his mental conditions, nor had he proven that he is entitled to disability benefits for his arm.  The Compensation Review Board ("CRB") affirmed the denials.  Mr. Honemond now petitions for our review.  We affirm.

## I.     Background

## A. Previous Workers' Compensation Claims

Mr. Honemond was a maintenance mechanic for Georgetown University for nearly 30 years. On June 30, 2016, he descended into a manhole on a ladder to shut off a steam valve. The manhole was very hot because the steam lines were uninsulated. Overcome by the heat, Mr. Honemond had to leave the manhole. As he ascended, he brushed his left forearm against the ladder and sustained a burn.

Mr. Honemond went to the emergency room at Medstar Georgetown University Hospital that same day. The emergency room nurse reported that she did not observe redness or other skin changes on Mr. Honemond's arm but noted that Mr. Honemond reported pain and tingling. The emergency room discharge report directed Mr. Honemond to use over-the-counter pain medicine and ointment on the site and to follow-up with his primary care doctor. Shortly thereafter, Mr. Honemond visited his primary care doctor and then an orthopedist, who referred him to a burn management specialist.

Mr. Honemond went to outpatient treatment at the Medstar Washington Hospital Center Burn Center. Occupational therapist Rebekah Allely assessed Mr. Honemond for an occupational therapy evaluation. She reported that she did not see any redness, discoloration, or scarring on Mr. Honemond's arm. Mr. Honemond then completed a short course of physical therapy with Ms. Allely. On the last visit, Ms. Allely reported that Mr. Honemond "does not appear to have physical limitations at this time" and that, while he had some diminished grip strength in his left arm, "it is well within functional norms." She concluded that Mr. Honemond did not have further occupational therapy needs. Mr. Honemond did not seek out treatment for his arm after this August 2016 visit.

In December 2016, Dr. Brian Schulman prepared an independent medical examination on behalf of intervenors. Dr. Schulman opined, to a reasonable degree of medical certainty, that Mr. Honemond had not sustained a psychiatric or mental disorder from the June 2016 event. Around this time, Mr. Honemond began treatment with psychiatrist Dr. Patrick Sheehan. On April 10, 2017, Dr. Sheehan diagnosed Mr. Honemond with PTSD, Depressive Disorder, and Panic Disorder causally related to the work incident.

Mr. Honemond filed a claim for workers' compensation benefits in May 2017.[1] He sought temporary total disability benefits, claiming that he had developed PTSD, Depressive Disorder, and Panic Disorder as a result of the work incident. The ALJ resolved these claims in a January 2018 compensation order on remand.[2] The ALJ did not credit Dr. Sheehan's diagnoses and instead credited Dr. Schulman, who opined that Mr. Honemond did not meet the criteria for the claimed mental conditions. The ALJ concluded that Mr. Honemond failed to establish that he has PTSD, Panic Disorder, or Depressive Disorder "causally related" to the work incident. The CRB affirmed.

Mr. Honemond then petitioned this court, which affirmed the CRB's decision by memorandum opinion and judgment.[3] The division determined that the ALJ had properly weighed the competing evidence to come to a conclusion that Mr.

---

[1] Intervenors voluntarily paid temporary total disability benefits from July 5, 2016 until August 19, 2016.

[2] The ALJ first denied this claim on August 31, 2017, but the CRB remanded so that the ALJ could make explicit credibility findings.

[3] *Honemond v. D.C. Dep't of Emp. Servs.*, No. 18-AA-635, Mem. Op. & J. (D.C. July 29, 2019).

Honemond did not suffer from a disabling mental condition causally related to his employment.

## B. Workers' Compensation Claims On Appeal

Mr. Honemond applied for modification of the compensation order on remand, pursuant to D.C. Code § 32-1524(a). Mr. Honemond alleged that he had experienced a "change of conditions" as to PTSD, Panic Disorder, and Generalized Anxiety Disorder. Mr. Honemond also requested benefits for permanent partial disability and temporary total disability for his left arm.[4]

At a status conference, the ALJ granted Mr. Honemond 48 hours to decide whether he wanted to present live testimony regarding his modification claim. Mr. Honemond did not express desire to present live testimony until over a week late. Intervenors objected, arguing that they had already begun work on their brief. The ALJ determined that the parties would submit on their briefs and allowed Mr. Honemond to proffer facts he had expected to elicit through live testimony.

---

[4] There was no contest to the timeliness of these claims.

In his brief to the ALJ on these issues, Mr. Honemond proffered that "his condition has worsened" and that his panic attacks "returned and waxed and waned over time." He proffered that he "has an array of different but worse complaints in 2020 than he had in 2017." He represented that he had begun treatment with a licensed clinical social worker, Penny Zimmerman, and that he had gone to the emergency room in August 2019 for "panic symptoms." He represented that Ms. Zimmerman had "noted" that he suffered from PTSD and Panic Disorder, and that his symptoms of panic and insomnia were "more intense," but he did not offer corroborating evidence. He also represented that Dr. Sheehan had diagnosed him with PTSD, an unspecified Depressive Disorder, Panic Disorder, and an alcohol use disorder on September 30, 2019. He did not provide updated medical records from Dr. Sheehan. He also represented generally that he had "updated psychiatric records" but did not provide them.

The ALJ denied Mr. Honemond's modification claim. The ALJ concluded that the PTSD and Panic Disorder claims had been previously litigated and that Mr. Honemond had shown no "reason to believe" that a change of conditions as to these claims had occurred.[5] The ALJ also concluded that Mr. Honemond had not shown

---

[5] Though he referenced it in his proffer, Mr. Honemond did not raise Depressive Disorder as a condition in his modification claim.

that he has Generalized Anxiety, as he provided no medical records and had not proffered that he had been diagnosed with that condition.

The ALJ then held a hearing regarding the nature and extent of Mr. Honemond's disability in his left arm. Mr. Honemond was the sole witness and testified that he was experiencing pain and trouble with strength and functionality. Both parties offered records from Mr. Honemond's 2016 visit to the emergency room, follow-up appointments with his primary care doctor and an orthopedist, and treatment and occupational therapy at the Burn Center.

The ALJ admitted the report of Dr. Joel Fechter, who had performed an evaluation of Mr. Honemond's arm on December 5, 2019. In his report, Dr. Fechter concluded, to a reasonable degree of medical certainty, that Mr. Honemond had a total impairment of 19% of his left arm. Dr. Fechter opined that the reported "weakness" in Mr. Honemond's arm entitled Mr. Honemond to 10% impairment, and that Mr. Honemond was also entitled to an additional 2% for each subjective factor of reported "pain, loss of endurance, and loss of function." He erroneously added these figures up to a 19% impairment instead of 16%.

The ALJ also admitted intervenors' report from Dr. Marc Danziger, who performed an independent medical evaluation of Mr. Honemond's arm on October 19, 2020. Dr. Danziger scored Mr. Honemond as 0% impaired because he had "normal sensory and motor function," a "full range of motion," and "completely normal skin turgor, function, and no sensory changes, scarring or abnormality[.]" Dr. Danziger determined that Mr. Honemond had only a "heat episode to the left forearm," as no treating physician had noted any symptom "that would classify as even a first degree burn."

The ALJ concluded that Mr. Honemond had not proven, by a preponderance of the evidence, that he was entitled to any disability benefits for his arm. The ALJ rejected Dr. Fechter's report as "unreliable."

Mr. Honemond appealed both the November 2020 order regarding mental conditions and the February 2021 order regarding physical disability to the CRB, which partially affirmed and partially remanded. The CRB agreed that Mr. Honemond's mental condition claims were barred because Mr. Honemond had not shown evidence of a new diagnosis or new symptoms. The CRB next determined that the compensation order contained insufficient findings of fact and analysis as to the claimed physical disability.

The ALJ then issued a compensation order on remand. The ALJ concluded again that Mr. Honemond failed to prove, by a preponderance of the evidence, that he is entitled to disability benefits for his arm. The ALJ explained that Dr. Fechter's report was "rejected" for four reasons. First, the ALJ explained that the report was "unreliable" because its rating was based on subjective complaints from Mr. Honemond, whom the ALJ found unreliable as to the nature and extent of his injury. Second, the ALJ explained that Dr. Fechter's report was unreliable because it lacked meaningful explanation. Third, the ALJ explained that basic math errors in Dr. Fechter's report suggested inattentiveness. Finally, the ALJ explained that these math errors made it difficult to discern both the actual rating and the components of the rating. The ALJ instead credited Dr. Danziger's report, and his 0% impairment rating, as persuasive and reliable because the report was based on objective factors and was sufficiently explained.

Mr. Honemond appealed to the CRB again. The CRB affirmed the denial of permanent partial disability. The CRB explained that the ALJ made sufficient additional findings of fact to support the conclusion that Dr. Fechter's report and opinions were unreliable. The CRB also found that the ALJ sufficiently explained why Dr. Danziger's report was credited as persuasive.

Mr. Honemond timely petitioned this court for review. Before us now are the April 2021 decision of the CRB, which affirmed the denial of the modification claim, and the August 2021 decision of the CRB, which affirmed the denial of the permanent partial disability claim.

## II.    Discussion

Review of a final order of the CRB is limited to determining whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Reyes v. D.C. Dep't of Emp. Servs*., 48 A.3d 159, 164 (D.C. 2012) (internal quotation marks omitted). Though the court's review is of the CRB's decision, we do not "ignore the compensation order which is the subject of the Board's review." *Georgetown Univ. Hosp. v. D.C. Dep't of Emp. Servs*., 916 A.2d 149, 151 (D.C. 2007). In conducting a review, we first decide "whether the agency has made a finding of fact on each material contested issue of fact; second, whether the agency's findings are supported by substantial evidence on the record as a whole; and third, whether the [Board's] conclusions flow rationally from those findings and comport with the applicable law." *Id.* (quoting *Mills v. D.C. Dep't of Emp. Servs.*,

838 A.2d 325, 328 (D.C. 2003)). A review of the CRB's legal rulings is de novo. *Reyes*, 48 A.3d at 164.

## A. Modification

Mr. Honemond argues that the CRB erred in affirming the determination that he had not demonstrated a reason to believe that there has been a change of condition as to claimed mental disabilities. We disagree. Mr. Honemond neither made an adequate proffer of facts, nor provided adequate medical evidence, to support his assertion that a "change of condition" occurred.

The principles of res judicata and collateral estoppel apply in administrative agency proceedings when "the earlier proceeding is the essential equivalent of a judicial proceeding." *Oubre v. D.C. Dep't of Emp. Servs.*, 630 A.2d 699, 703 (D.C. 1993) (quoting *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1194 (D.C. 1980)). "After a valid final adjudication on the merits, the doctrine of res judicata bars relitigation of the same claim between the same parties. Collateral estoppel, a related doctrine, precludes relitigation of issues of fact or law determined in a prior proceeding which were essential to that judgment." *Id.* (internal quotation marks and citations omitted).

The D.C. Workers' Compensation Act provides a specific procedure in which a claimant may "revisit issues previously decided by a compensation order." *Short v. D.C. Dep't of Emp. Servs.*, 723 A.2d 845, 850 (D.C. 1998).

> At any time prior to 1 year after the date of the last payment of compensation or at any time prior to 1 year after the rejection of a claim, . . . the Mayor may, upon his own initiative or upon application of a party in interest, order a review of a compensation case pursuant to the procedures provided in § 32-1520 where there is reason to believe that a change of conditions has occurred which raises issues concerning:
>
> (1) The fact or the degree of disability or the amount of compensation payable pursuant thereto; or
> (2) The fact of eligibility or the amount of compensation payable pursuant to § 32-1509.

D.C. Code § 32-1524(a). Thus, a claimant may pursue modification of a previous order if there is a "change as to the 'fact or the degree of disability[.]'" *Short*, 723 A.2d at 850 (quoting D.C. Code § 32-1524(a)(1)); *see also Washington Metro. Area Transit Auth. v. D.C. Dep't of Emp. Servs.*, 770 A.2d 965, 972 (D.C. 2001) ("*Young*"). "[T]he relevant change is a change in the condition determined to exist by the previous factfinder (here, [the ALJ]), not a change from a [medical estimation] of the claimant's condition." *Bowser v. D.C. Dep't of Emp. Servs.*, 129 A.3d 253, 260 (D.C. 2015), *as amended* (Feb. 25, 2016).

There is a two-step procedure for when a claimant pursues modification of a previous order. First, "the agency must conduct a 'preliminary examination of evidence intended to be submitted at an evidentiary hearing[.]'" *Bowser*, 129 A.3d at 258 (quoting *Snipes v. D.C. Dep't. of Emp. Servs.*, 542 A.2d 832, 834 n.4 (D.C. 1988)). This review "shall be limited solely to new evidence which directly addresses the alleged change of conditions." D.C. Code § 32-1524(b). But "it seems evident that in this determination a hearing examiner must necessarily take into account what came before in determining whether a 'change' has occurred." *Snipes*, 542 A.2d at 835. Second, "if that examination reveals 'evidence which could establish, if credited, changed conditions' (the 'threshold test')," then the agency must "conduct an evidentiary hearing on the issue of whether there has been a change in conditions." *Bowser*, 129 A.3d at 258 (quoting *Snipes*, 542 A.2d at 835). The "scope of review on these issues requires [us] to decide whether the agency made the threshold determination under the statute and whether its determination is supported by substantial evidence in the record." *Id.* (cleaned up).

As a preliminary matter, we note that the ALJ gave both parties the opportunity to present live testimony as to issues implicated by a *Snipes* inquiry. Mr. Honemond was over a week late in informing the ALJ that he wanted to present

testimony, but he was allowed to proffer facts that he had expected to elicit. We have never suggested that the threshold determination requires live testimony. *See Bowser*, 129 A.3d at 258 (explaining only that an ALJ must conduct a "preliminary examination of evidence intended to be submitted at an evidentiary hearing"). Thus, contrary to his assertions, Mr. Honemond was given an adequate opportunity to support his claim for modification.[6]

At the threshold stage, movant must "meet the modest threshold burden of producing minimal evidence to support the 'reason to believe' standard." *Washington Metro. Area Transit Auth. v. D.C. Dep't of Emp. Servs.*, 703 A.2d 1225, 1230 (D.C. 1997) ("*Anderson*"); *see also Snipes*, 542 A.2d at 835 ("[A] claimant's right to an evidentiary hearing . . . is triggered only where there is reason to believe that a change of conditions has occurred.") (internal quotation marks omitted). This is "short of full proof," but requires "some affirmative factual showing that a change of conditions has occurred." *Anderson*, 703 A.2d at 1230; *see also Quaranta v. D.C. Dep't of Emp. Servs.*, 284 A.3d 389, 393 (D.C. 2022) ("That is not an exacting standard, but it does require an applicant to produce evidence or at least a proffer

---

[6] We also find no merit to Mr. Honemond's assertion at oral argument that the ALJ prevented him from supplementing his claim with exhibits. There is nothing in the order suggesting that Mr. Honemond was barred from providing exhibits or otherwise presenting corroborating evidence.

'which could establish, if credited, changed conditions' that might alter their disability award.") (quoting *Bowser*, 129 A.3d at 258).

Mr. Honemond failed to put forth any more than generic and conclusory proffers regarding his modification claim. As to Generalized Anxiety Disorder, the only condition that was not litigated previously, Mr. Honemond provided no medical evidence, nor did he even proffer that he had been diagnosed with that condition. The CRB correctly determined that "[m]erely claiming a new diagnosis (generalized anxiety), with similar symptoms, does not rise to the level of a reason to believe that there has been a change in Claimant's condition that warrants a modification."

As to claims of PTSD and Panic Disorder, Mr. Honemond did not present sufficient evidence to support a conclusion that he had developed PTSD or Panic Disorder causally related to the work incident since the ALJ's previous findings on these issues. *See Bowser*, 129 A.3d at 260 (explaining that the "relevant change is a change in the condition determined to exist by the previous factfinder"). Importantly, Mr. Honemond presented no new medical evidence. Though Mr. Honemond represented that Dr. Sheehan diagnosed him with PTSD, an unspecified Depressive Disorder, Panic Disorder, and an alcohol abuse disorder in September 2019, there was no accompanying medical record to support this assertion. Based

on these general proffers, it is also unclear if Dr. Sheehan newly diagnosed Mr. Honemond with these conditions or if Dr. Sheehan was merely reiterating his diagnoses from 2017—diagnoses which the ALJ found were too insufficiently explained and supported to be credible.

Mr. Honemond's other proffers related to PTSD and Panic Disorder were too perfunctory and vague to be of value. Mr. Honemond just generally represented that he "has an array of different but worse complaints in 2020 than he had in 2017" and that "his condition[] has worsened." There is no specificity in the descriptions of symptoms, and there are no supporting medical records to shed light on claimed symptoms or treatments. *Cf. Walden v. D.C. Dep't of Emp. Servs.*, 759 A.2d 186, 191 (D.C. 2000) (concluding that claimant met the threshold test when she offered a medical report from her doctor "clearly identif[ying] at least one new symptom attributable to . . . previous injury" and a "significant change in the degree of her disability"). These conclusory proffers are not enough.[7]

---

[7] We also find no merit to Mr. Honemond's contention that the ALJ incorrectly used a "preponderance of the evidence" standard for this claim. Instead, the ALJ properly examined whether Mr. Honemond had demonstrated a "reason to believe" that a change had occurred by comparing both the factual determinations in the previous compensation order on remand and the new evidence and proffers.

Mr. Honemond argues that the CRB erred as a matter of law by determining that a "worsening" condition would never merit modification. The statute contemplates "worsening" conditions, as well as new conditions. *See* D.C. Code § 32-1524(a)(1) (a claimant may apply for modification if there is a change regarding "the fact *or the degree* of disability") (emphasis added). But a claimant must still show some reason to believe a change has occurred. For example, in *Short*, 723 A.2d at 848, in support of modification, Mr. Short presented new medical evidence from two different doctors, which showed that he was exhibiting new symptoms and had been diagnosed with a new disability attributable to a work injury. Similarly, in *Young*, 770 A.2d at 969, the initial compensation orders had acknowledged that Mr. Young had "some initial work-related disability." Mr. Young presented new testimony from his treating psychiatrist, as well as evidence of specific new symptoms, to show the "subsequent emergence of a work-related injury." *Id.* at 967, 970. In both cases, though there was some similarity between both the previously litigated conditions and the new conditions, the claimant provided adequate evidence of a "change" such that the modification provision would apply. *Short*, 723 A.2d at 850; *Young*, 770 A.2d at 970.

Here, however, Mr. Honemond is not arguing that a recognized condition "worsened." He is simply re-litigating the findings and conclusions from the first compensation order on remand. We previously affirmed that Mr. Honemond "did not suffer from a disabling mental injury that was causally related to his employment." Mr. Honemond cannot now claim that these conditions have "worsened" when he failed to establish that he had PTSD or panic disorder causally related to the work incident in the first place. Mr. Honemond is barred by collateral estoppel, to the extent he attempts to re-litigate the findings from the first compensation order on remand, and res judicata, to the extent that he re-litigates the same mental condition claims against intervenors. *See Walden*, 759 A.2d at 189. Mr. Honemond's burden was to show that these doctrines do not apply, which he did not do.

Overall, although a claimant has a minimal burden at the threshold stage, he must still present some evidence to suggest a "change of conditions" has occurred. Mr. Honemond has not. Accordingly, we affirm the judgment of the CRB.

## B. Permanent Partial Disability

Mr. Honemond also challenges the CRB's determination that he is not entitled to permanent partial disability benefits because he did not demonstrate that he is permanently and partially disabled. We disagree and affirm.

A claimant has the burden of proving, by the preponderance of the evidence, that he is entitled to a disability award. *Washington Metro. Area Transit Auth. v. D.C. Dep't of Emp. Servs.*, 926 A.2d 140, 149 (D.C. 2007) ("*Browne*"). A "disability" is a "physical or mental incapacity because of injury which results in the loss of wages." *Negussie v. D.C. Dep't of Emp. Servs.*, 915 A.2d 391, 396 (D.C. 2007) (quoting D.C. Code § 32-1501(8)) (cleaned up). "An award may be paid for permanent partial disability, in which case '[c]ompensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member.'" *Id.* (quoting D.C. Code § 32-1508(3)(S)).

"Disability is an economic and not a medical concept." *Washington Post v. D.C. Dep't of Emp. Servs.*, 675 A.2d 37, 40 (D.C. 1996). "Disability, as defined in our statute, ultimately requires a legal determination." *Negussie*, 915 A.2d at 397. A claimant is not entitled to any presumptions on the nature and extent of disability.

*Browne*, 926 A.2d at 149. In determining disability, the most recent edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment may be utilized, along with factors of pain, weakness, atrophy, loss of endurance, and loss of function. *Negussie*, 915 A.2d at 396 n.2 (citing D.C. Code § 32-1508 (U-i)). An "ALJ is required by statute to consider all the evidence and to exercise independent judgment in determining whether the claimant has a permanent disability and, if so, the extent of that disability." *Golding-Alleyne v. D.C. Dep't of Emp. Servs.*, 980 A.2d 1209, 1215 (D.C. 2009).

"The trier of fact is entitled to draw reasonable inferences from the evidence presented." *George Hyman Const. Co. v. D.C. Dep't of Emp. Servs.*, 498 A.2d 563, 566 (D.C. 1985). The ALJ's credibility determinations are entitled to great weight. *Golding-Alleyne*, 980 A.2d at 1213. Our role in reviewing a credibility determination is to see whether it is supported by substantial evidence on consideration of the entire record. *Id.* at 1214.

The only disputed issue is the nature and extent of Mr. Honemond's alleged physical disability. The medical evaluations provided competing opinions: Dr. Fechter opined that Mr. Honemond was 19% impaired, and Dr. Danziger opined that

Mr. Honemond was 0% impaired.[8]  Mr. Honemond raises various challenges to the ALJ's determination that Dr. Fechter's report was unreliable and that he did not provide evidence of physical disability.  We disagree.

Substantial evidence supports the determination that Dr. Fechter's report was unreliable and that Dr. Danziger's report was reliable.  The ALJ gave ample justification for not crediting Dr. Fechter's report.  The ALJ explained that Dr. Fechter's report was unduly influenced by Mr. Honemond's subjective complaints, which were not credible, as they were often contrary to the observations of treating medical personnel.  The ALJ also explained that Dr. Fechter's report lacked meaningful explanation.  Dr. Fechter reported that he generally observed "some weakness of grip strength" and atrophy in Mr. Honemond's left arm.  Dr. Fechter then determined, without explanation for the calculation of this number, that Mr. Honemond's complaints of "weakness" supported an impairment rating of 10%.  Dr. Fechter then allocated 2% for each "subjective factor[]" of pain, loss of endurance, and loss of function, with no further explanation.

---

[8] There is a preference for the testimony of treating physicians over doctors retained for litigation purposes.  *Short*, 723 A.2d at 851.  Here, neither physician is Mr. Honemond's treating physician.

The ALJ additionally determined that the basic math errors in Dr. Fechter's report showed inattentiveness and obscured the basis for the impairment rating. Dr. Fechter erroneously totaled the impairment rating to 19% instead of 16%, which we agree both shows carelessness and also obscures the specifics and the total of the rating. It is unclear if Dr. Fechter meant to score Mr. Honemond as 16% impaired or if the individual components of the rating are not as reported. The ALJ thus reasonably concluded that these factors weigh against the report's credibility.

The ALJ then reasonably credited Dr. Danziger's report as persuasive. The ALJ explained that Dr. Danziger's report had "objective findings" and that "his examination was performed with greater care." Indeed, Dr. Danziger's report includes notations on bending and rotation, range of motion, sensitivity, and skin turgor in Mr. Honemond's arm. Dr. Danziger explained that he based his impairment rating on the fact that Mr. Honemond has normal motor and sensory function, a full range of motion, normal skin and sensory changes, and no abnormality. Dr. Danziger further explained that he also reviewed Mr. Honemond's medical records from the date of injury and subsequent treatment, which he took into account for his rating.

The ALJ thus gave ample and reasonable justification for crediting Dr. Danziger's report, and discrediting Dr. Fechter's report, and the CRB did not err in affirming the ALJ's findings and conclusions.[9] Mr. Honemond failed to meet his burden in showing that he is entitled to an award for physical disability.

Mr. Honemond also argues that there is not enough specificity in the order to support a determination that Mr. Honemond was not credible. We disagree.

In judging Mr. Honemond's credibility, the ALJ made specific comparisons between Mr. Honemond's testimony and reports from treating nurses and physicians around the time of injury. While Mr. Honemond testified that he has diminished grip strength, Ms. Allely, his occupational therapist, reported that his grip strength was "well within functional norms" and that he "does not appear to have physical limitations[.]" Ms. Allely reported that there is "no wound, no discoloration, skin fully intact," with "no reported discomfort or sensitivity." As of August 2016, Ms. Allely concluded that Mr. Honemond had no more physical limitations.

---

[9] The ALJ is not required to "choose a disability percentage rating provided either by the claimant's or the employer's medical examiner." *Negussie*, 915 A.2d at 399. But the ALJ may choose to credit one medical report over another and adopt the impairment rating within. *See Abebe v. D.C. Dep't of Emp. Servs.*, 185 A.3d 723, 727 (D.C. 2018).

The ALJ also emphasized that Mr. Honemond was "fully treated" during the initial round of diagnosis and treatment in the summer of 2016. As Mr. Honemond testified, he did not seek out medical care for his arm after August 2016. While evidence of continuing medical care is not required to prove the existence of a disabling condition, "the nature and regularity of continuing medical care after the injury has stabilized may be useful information in assessing the statutory factors of pain, weakness, atrophy, loss of endurance, and loss of function[.]" *Dent v. D.C. Dep't of Emp. Servs.*, 158 A.3d 886, 904 (D.C. 2017), *as amended* (May 25, 2017). "[A] dearth of evidence of medical analysis and treatment is significant when assessing whether a claimant is entitled to a schedule award." *Id.* (internal quotations removed).

The ALJ also heard Mr. Honemond's testimony at the hearing and still did not credit it. *See Washington Metro. Area Transit Auth. v. D.C. Dep't of Emp. Servs.*, 683 A.2d 470, 477 (D.C. 1996) ("[T]he hearing examiner is in the best position to observe the demeanor of witnesses.") (internal quotation marks and citations omitted). Overall, there was substantial evidence to support the ALJ's determination that Mr. Honemond was not credible.[10]

---

[10] We also find no merit to Mr. Honemond's argument that the CRB "refus[ed] to evaluate" the ALJ's credibility findings. The CRB explained that, on remand for

Finally, Mr. Honemond argues that the ALJ was required to arrive at an independent impairment percentage. An ALJ need not accept the impairment percentage of a medical expert; instead, an ALJ must exercise independent judgment in fixing a disability percentage rating. *See Abebe v. D.C. Dep't of Emp. Servs.*, 185 A.3d 723, 727 (D.C. 2018). In *Abebe*, this court explained that because the petitioner there had proved, by a preponderance of the evidence, that he had a disability, the ALJ was required to assign a percentage—the ALJ's rejection of the competing medical evaluations and the percentages within them notwithstanding. *Id.*

Here, however, the ALJ credited Dr. Danziger's report as "persuasive" and "reliable." The ALJ further noted that "the record does not support a persuasive reason . . . to deviate from the zero-percent baseline Dr. Danziger identified." The contrast to *Abebe* is clear: Mr. Honemond did not prove by a preponderance of the evidence that he has a disability, so the ALJ was not required to assign its own independent impairment percentage.

---

this specific purpose, the ALJ made sufficient findings of fact to support its determination that Dr. Fechter's opinions were unreliable.

### III.    Conclusion

For the foregoing reasons, we affirm the judgment of the CRB.   Mr. Honemond did not show a "reason to believe" that a change of conditions had occurred such that he was entitled to an evidentiary hearing on his modification claim, and he also failed to prove that he is entitled to any disability benefits for his left arm.

*So ordered.*